# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TRANSHORN, LTD., On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 01178 (TPG) (e-filed)<br><br>**AFFIDAVIT OF FRED TAYLOR ISQUITH IN SUPPORT OF JOINT MOTION FOR CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD CLASS COUNSEL** |
| 1775 HOUSING ASSOCIATES, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 02785 (MGC) |

(Additional Case Captions are on Following Pages)

Dockets.Justia.com

TRIANGLE HOUSING ASSOCIATES, L.P.,
On Behalf of Itself and All Others Similarly
Situated,

Civil Action No. 04 CV 02786 (RO)

                                        Plaintiff,

                    -vs.-

UNITED TECHNOLOGIES
CORPORATION, OTIS ELEVATOR CO.,
KONE CORPORATION, KONE INC.,
SCHINDLER HOLDING LTD.,
SCHINDLER ELEVATOR CORPORATION,
THYSSENKRUPP AG and THYSSEN
ELEVATOR CAPITAL CORP.,

                                        Defendants.

ROCHDALE VILLAGE, INC., On Behalf of
Itself and All Others Similarly Situated,

Civil Action No.  04 CV 03225 (TPG) (e-filed)

                                        Plaintiff,

                    -vs.-

UNITED TECHNOLOGIES
CORPORATION, OTIS ELEVATOR CO.,
KONE CORPORATION, KONE INC.,
SCHINDLER HOLDING LTD.,
SCHINDLER ELEVATOR CORPORATION,
THYSSENKRUPP AG and THYSSEN
ELEVATOR CAPITAL CORP.,

                                        Defendants.

(Additional Case Captions are on Following Page)

BRIMINGHAM BUILDING TRADES
TOWERS, INC., On Behalf of Itself and All
Others Similarly Situated,

Civil Action No. 04 CV 03229 (TPG) (e-filed)

Plaintiff,

-vs.-

UNITED TECHNOLOGIES CORPORATION,
OTIS ELEVATOR CO., KONE
CORPORATION, KONE INC., SCHINDLER
HOLDING LTD., SCHINDLER ELEVATOR
CORPORATION, THYSSENKRUPP AG and
THYSSEN ELEVATOR CAPITAL CORP.,

Defendants.

RIVERBAY CORPORATION, On Behalf of
Itself and All Others Similarly Situated,

Civil Action No. 04 CV 03308 (TPG) (e-filed)

Plaintiff,

-vs.-

UNITED TECHNOLOGIES CORPORATION,
OTIS ELEVATOR CO., KONE
CORPORATION, KONE INC., SCHINDLER
HOLDING LTD., SCHINDLER ELEVATOR
CORPORATION, THYSSENKRUPP AG and
THYSSEN ELEVATOR CAPITAL CORP.,

Defendants.

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

FRED TAYLOR ISQUITH, being duly sworn, states:

3

1.      I am a member of the Bar of this Court and the State of New York, and of the law firm Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein").  I make this affidavit in support of the joint motion of plaintiff 1775 Housing Associates in civil action number 04 CV 02785 (MCG), plaintiff Triangle Housing Associates, L.P. in civil action number 04 CV 02786 (RO), plaintiff Rochdale Village, Inc. in civil action number 04 CV 03225 (TPG), and plaintiff Riverbay Corp. in civil action number 04 CV 00308 (TPG), for consolidation of each of the related antitrust class pending in this Court listed in the caption, together with any subsequent related cases filed in or removed or transferred to this Court, and for appointment of Wolf Haldenstein as interim lead class counsel for the plaintiffs in the consolidated actions.

2.      Attached as Exhibit 1 is a true and correct copy of the complaint in the first-captioned action, *Transhorn Ltd. v. United Technologies Corp., et al.*, No. 04 CV 01178 (TPG).

3.      Attached as Exhibit 2 is a true and correct copy of the complaint in the second-captioned action, *1775 Housing Associates v. United Technologies Corp., et al.*, No. 04 CV 02785 (MGC).

4.      Attached as Exhibit 3 is a true and correct copy of the complaint in the third-captioned action, *Triangle Housing Associates, L.P. v. United Technologies Corp., et al.*, No. 04 CV 02786 (RO).

5.      Attached as Exhibit 4 is a true and correct copy of the complaint in the fourth-captioned action, *Rochdale Village, Inc. v. United Technologies Corp., et al.*, No. 04 CV 03225 (TPG).

6.    Attached as Exhibit 5 is a true and correct copy of the complaint in the sixth-captioned action, *Riverbay Corporation v. United Technologies Corp., et al.*, No. 04 CV 03 (TPG).

7.    Attached as Exhibit 6 is a copy of the docket sheet for the fifth-captioned action, *Brimingham Buildings Trades Towers, Inc. v. United Technologies Corp., et al.*, No. 04 CV 03229. A copy of the complaint in this case is not yet available in the Clerk's office.

8.    Attached hereto as Exhibit 7 is a description of Wolf Haldenstein's litigation department, which describes the firm's long and extensive experience and expertise in litigating complex class actions, including large consolidated antitrust class actions.

9.    In addition to our class action practice, Wolf Haldenstein has extensive experience representing the boards of housing cooperatives, large apartment complexes and condominium associations. The head of our 14-lawyer Real Estate Department, Stuart Saft, has written and lectured extensively on the problems and operations of cooperative and condominium buildings in New York and is Chairman of the Council of New York Cooperatives and Condominiums and the recently elected Chairman of the Board of the National Cooperative Bank. Mr. Saft also was a member of the New York State Attorney General's Task Force on Condominium Issues, a co-author of New York State's Condominium Financing Legislation, a member of the committee that pressed the State Assembly for the establishment of a Special Part in Housing Court for Cooperatives and Condominiums, and is the author of numerous books and articles on real estate.

10.    The firm presently represents over 300 Boards of cooperative and condominium buildings located throughout New York City, including many of the largest residential complexes in New York City, some of which have more than one hundred elevators

potentially at issue in these cases and have expended hundreds of thousands to millions of dollars on purchases of elevators and elevator repair services for their buildings.

11.    Wolf Haldenstein is well-positioned to lead the prosecution of these class actions. The firm has already devoted considerable attorney time and resources into investigating these cases and will continue to do so until these matters are resolved. Wolf Haldenstein is counsel of record in four of the actions, representing possibly the largest residential apartment complexes in the United States. The firm has considerable experience handling antitrust class actions and will fairly and adequately represent the proposed Class. Wolf Haldenstein is recognized nationwide as one of the Country's premier class actions firms and is in a position to dedicate substantial resources to representing the Class. Furthermore, Wolf Haldenstein has particular expertise with respect to the representation of large residential cooperatives, condominium and other apartment complexes and commercial buildings that maintain many of the elevators at issue in these cases.

12.    Accordingly, I respectfully submit that appointment of Wolf Haldenstein as Interim Lead Class Counsel is appropriate. If appointed Interim Lead Class Counsel, the firm will responsibly lead the prosecution and resolution of all claims asserted, or which may be asserted, in these related cases and each future related action that may be filed in or transferred or removed to this Court.

13.    I respectfully submit that maximum efficiency and utility will be achieved in these cases if the Court orders that Interim Lead Class Counsel be charged with performing the following specific duties, as other courts have done in other similar contexts, *cf. Manual for Complex Litigation (4th ed.)* (Federal Judicial Center 2004) at § 40.22:

(a)  to direct, and execute on behalf of plaintiffs, all pleadings and other filings with the Court;

(b)  to direct the briefing and argument of all motions;

(c)  to direct the conduct of discovery proceedings including, among other things, the scheduling and examination of witnesses in depositions;

(d)  to direct the selection of counsel to act as spokespersons with the Court;

(e)  to accept service of papers for all plaintiffs with respect to any document served by defendants;

(f)  to call meetings of plaintiffs as they deem necessary and appropriate from time to time and to distribute to all plaintiffs copies of motions, orders, and decisions of the Court, where appropriate, and to maintain up-to-date service lists, to be made available to the Court;

(g)  to direct and conduct all settlement negotiations;

(h)  to direct and conduct all pretrial proceedings, trial preparation, trials and post-trial proceedings, and delegate work responsibilities to selected counsel as may be required;

(i)  to collect time records from plaintiffs' counsel; and

(j)  to supervise any other matters concerning the prosecution or resolution of the above-captioned litigation and otherwise manage the prosecution of any claims asserted in the Elevator Antitrust Litigation.

Fred Taylor Isquith

Sworn to before me this
3rd day of May, 2004

Notary Public

360722

ALEXANDER H. SCHMIDT
Notary Public, State of New York
No.
Qualified         ounty
Commission              1992
July 26, 2006

7

## CERTIFICATE OF SERVICE

I, Alexander H. Schmidt, hereby certify that on this 3rd day of May, 2004, I have caused a

true copy of the attached Joint Motion For Consolidation and For Appointment of Interim Lead

Class Counsel, together with the supporting Affidavit of Fred Taylor Isquith, the Exhibits

thereto, and the accompanying Proposed Order and Memorandum of Law filed in support of the

joint motion, to be delivered to the following by the methods indicated below:

**By Overnight Mail**
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, Seventh Floor
New York, New York 10036
(212) 490-9550
       -and-

MILBERG WEISS BERSHAD HYNES
 & LERACH LLP
401 B Street, Suite 1700
San Diego, CA 92101
(619) 231-1058
*Attorneys for Plaintiff in*
 *Transhorn, Ltd. v. United Technologies Corp., et al.,*
 04 CV 01178 (TPG)

Antonio Vozzolo
FARUQI & FARUQI, LLP
320 East 39th Street
New York, NY 10016
(212) 983-9330
*Attorneys for Plaintiff in*
 *Brimingham Building Trade Towers, Inc.*
 *v. United Technologies Corp., et al.,*
 04 CV 03229

Patricia M. McDermott
CLEARY GOTTLIEB STEEN & HAMILTON
2000 Pennsylvania Avenue, N.W., Suite 9000
Washington, D.C. 20006-1801
(202) 974-1500
*Attorneys for Defendant*
 *Otis Elevator Co.*

UNITED TECHNOLOGIES CORPORATION
United Technologies Building
Hartford, Connecticut 06101
Attn:  Legal Dept.
*Defendant*

KONE INC.
1 Kone CT
Moline, Illinois 61265
Attn:  Legal Dept.
*Defendant*

SCHINDLER ELEVATOR CORPORATION
20 Whippany Rd
Morristown, New Jersey 07960
Attn:  Legal Dept.
*Defendant*

THYSSENKRUPP ELEVATOR CORPORATION
1995 North Park Place Suite 370
Atlanta, Georgia 30339-2072
Attn: Legal Dept.
*Defendant*

**By Courier (Two-Day Delivery)**
SCHINDLER HOLDING LTD.
Seestrasse 55
CH-6052 Hergiswil, Nidwalden, Switzerland
41-41-632-85-50
Attn:  Legal Dept.
*Defendant*

**By Courier (Three-Day Delivery)**
THYSSENKRUPP AG
August-Thyssen-Strabe 1
40211 Dusseldorf, Germany
Attn: Legal Department
*Defendant*

_____
Alexander H. Schmidt

360835

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

04 CV 01178

———————————————————— x
TRANSHORN LTD., On Behalf of Itself and : Civil Action No.
All Others Similarly Situated, :
: CLASS ACTION
            Plaintiff, :
: COMPLAINT FOR VIOLATIONS OF THE
    vs. : SHERMAN ANTITRUST ACT
:
UNITED TECHNOLOGIES :
CORPORATION, OTIS ELEVATOR CO., :
KONE CORPORATION, KONE INC., :
SCHINDLER HOLDING LTD., SCHINDLER :
ELEVATOR CORPORATION, :
THYSSENKRUPP AG and THYSSEN :
ELEVATOR CAPITAL CORP., :
:
            Defendants. :
———————————————————— x : DEMAND FOR JURY TRIAL

        Plaintiff, on behalf of itself and all others similarly situated, brings this Complaint against

defendants United Technologies Corporation, Otis Elevator Co., Kone Corporation, Kone Inc.,

Schindler Holding Ltd., Schindler Elevator Corp., ThyssenKrupp AG and Thyssen Elevator Capital

Corp., and their unnamed co-conspirators, and in support of its Complaint states as follows:

## NATURE OF THIS ACTION

    1.    This case arises out of a conspiracy among all defendants to fix prices and rig bids for

sales and service of elevators and escalators. Plaintiff, on behalf of itself and the Class described

below, brings this action pursuant to §1 of the Sherman Act, 15 U.S.C. §1, and §4 of the Clayton

Act, 15 U.S.C. §15.

- 1 -

2.    Pursuant to Rule 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiff seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States on behalf of itself and all others similarly situated.

## JURISDICTION AND VENUE

3.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1391(b) and (c) and 15 U.S.C. §§15, 22 and 26.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (b) and (c) and 15 U.S.C. §§15, 22, and 26. Defendant and their co-conspirators have committed acts in furtherance of the conspiracy in this District, each defendant has conducted business and/or maintained offices within this District, as have certain of defendants' co-conspirators, as identified in this Complaint.

## THE PARTIES

5.    Plaintiff Transhorn Ltd. is an English corporation with its principal place of business in London, England. During the period alleged in the Complaint, Transhorn Ltd. purchased elevators and elevator maintenance and repair services from defendants. As a result of defendants' conspiracy, Transhorn Ltd. has been injured in its business and property because the prices it paid were artificially raised to anti-competitive levels by defendants and their co-conspirators.

6.    Defendant United Technologies Corporation ("United") is a Delaware corporation with its principal place of business in Hartford, Connecticut. During the period set forth in this Complaint, United was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

7.    Defendant Otis Elevator Co. ("Otis") is a New Jersey corporation with its principal place of business in Farmington, Connecticut. During the period set forth in this Complaint, Otis was engaged in the business of selling elevators and escalators and providing elevator and escalator

maintenance and repair services to customers in the United States and other countries. Otis is a wholly owned subsidiary of United.

8.     Defendant Kone Corporation ("Kone") is a Finnish company with its principal place of business in Helsinki, Finland. During the period set forth in this Complaint, Kone was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

9.     Defendant Kone Inc. is a Delaware corporation with its principal place of business in Moline, Illinois and offices in New York, New York. During the period set forth in this Complaint, Kone Inc. was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries. Kone Inc. is a wholly owned subsidiary of Kone Corporation.

10.     Defendant Schindler Holding Ltd. ("Schindler Holding") is a corporation organized and run under the laws of Switzerland with its principal place of business in Hergiswil, Switzerland. During the period set forth in this Complaint, Schindler Holding was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

11.     Defendant Schindler Elevator Corporation ("Schindler") is a Delaware corporation with its principal place of business in Morristown, New Jersey. During the period set forth in this Complaint, Schindler was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries. Schindler is a wholly owned subsidiary of Schindler Holding.

12.     ThyssenKrupp AG is a German corporation with its principal place of business in Dusseldorf, Germany. During the period set forth in this Complaint, ThyssenKrupp AG was

engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

13.     Thyssen Elevator Capital Corp. ("Thyssen") is a Delaware corporation with its principal place of business in Whittier, California. During the period set forth in this Complaint, Thyssen was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries. Thyssen is a wholly owned subsidiary of ThyssenKrupp AG.

14.     Various corporations and individuals not named as defendants in this Complaint participated as co-conspirators in the anti-competitive conduct alleged herein and performed acts and made statements in furtherance thereof.

15.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, it means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

16.     Various individuals, partnerships, and corporations not named in this Complaint have participated as co-conspirators in the violations of law alleged in this Complaint, and have performed acts in furtherance thereof. The identity of all co-conspirators is unknown at this time and will require discovery. When their true identities are ascertained the Complaint shall be amended to reflect their true names.

### CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action on behalf of itself and the members of the Class comprising:

> All persons or entities who purchased elevators or escalators or elevator or escalator repair and maintenance services from defendants or their unnamed co-conspirators in the United States, Europe and elsewhere from February 13, 2000

- 4 -

through the present (the "Class Period"). Excluded from the Class are defendants, their co-conspirators and their respective parents, subsidiaries and affiliates.

18.     The Class numbers at least in the thousands and is so numerous that joinder of all persons is impracticable.

19.     Plaintiff's claims are typical of other members of the Class who likewise sustained antitrust injury and were damaged through sales of elevators and escalators and elevator and escalator repairs and maintenance services at artificially high prices.

20.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased elevators and elevator maintenance and repair services from defendants and has a common and non-antagonistic interest in recovering money lost through unlawful activity and enjoining and deterring future unlawful activity in the elevator and escalator sales and services market. Plaintiff's undersigned counsel are experienced in antitrust and other complex class action litigation.

21.     Common questions of law and fact predominate over questions pertinent to only individual Class members. Questions of law and fact common to the Class members predominate over questions, if any, that may affect only individual members because defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in defendants' collusion. Common questions of law and fact include:

(a)     Whether defendants and others combined, conspired, or contracted to fix prices of elevators and escalators and elevator and escalator maintenance and repair services at artificially high levels;

(b)     Whether defendants and others combined, conspired, or contracted to rig bids for elevator and escalator sales and service contracts;

(c)     The dates of the formation of this illegal contract or conspiracy;

- 5 -

(d)     The identities of participants in the conspiracy;

(e)     The manner and means of the conspiracy;

(f)     Whether defendants and their co-conspirators fraudulently concealed their conspiracy;

(g)     Whether Class members have been damaged by the illegal conspiracy, including the degree to which prices paid by the Class are higher than those that would be paid in a market free from collusion; and

(h)     The appropriateness of injunctive relief to restrain future violations.

22.     Class action treatment is superior to other means of prosecuting these claims as the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication. Moreover, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication, effort or expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable and is one for which records exist.

23.     Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class.

## TRADE AND COMMERCE

24.     Defendants and their co-conspirators manufacture and sell elevators and escalators, and also contract with customers for elevator and escalator sales and for the provision of elevator and escalator maintenance and repair services.

- 6 -

25.     During the Class Period, the conduct of defendants and their co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States. The conduct of defendants and their co-conspirators has directly and substantially restrained such trade and commerce.

## ALLEGATIONS OF WRONGDOING

26.     Beginning at least as early as 2000 and continuing until now, defendants and their co-conspirators engaged in a combination and conspiracy to suppress and eliminate competition in the sale and service of elevators and escalators by fixing the price of elevators and escalators, rigging bids for contracts for elevator and escalator sales, and rigging bids for contracts for elevator and escalator maintenance and repair services. Defendants and their co-conspirators conducted the combination and conspiracy in the United States, Europe and elsewhere, and its effects were felt by plaintiff and Class members in the United States and elsewhere.

27.     The alleged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators, the substantial terms of which were to agree to fix and maintain prices for elevators and escalators and to coordinate bid prices for contracts for the sale of elevators and escalators and the provision of elevator and escalator maintenance and repair services in the United States and elsewhere.

28.     For purposes of forming and carrying out the charged combination and conspiracy, the defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)     Participating in meetings and conversations in Europe and the United States to discuss the prices of elevators and escalators sold in the United States and elsewhere;

- 7 -

(b)    Agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of elevators and escalators sold in the United States and elsewhere;

(c)    Agreeing in advance on bid prices and bid winners for elevator and escalator sales contracts, and for contracts for the provision of elevator and escalator maintenance and repair services; and

(d)    Discussing and exchanging price quotations to certain customers so as not to undercut the price of a competitor.

29.    The combination and conspiracy engaged in by the defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of §1 of the Sherman Act, 15 U.S.C. §1.

## FRAUDULENT CONCEALMENT

30.    Throughout the Class Period, defendants fraudulently concealed their unlawful conspiracy from plaintiff and Class members. Plaintiff and other Class members had no knowledge of the contract, combination or conspiracy alleged in this Complaint, or any facts that might have led to the discovery thereof, in the exercise of reasonable diligence, until late January 2004. At that time, it was reported that the European offices of defendants Kone, Schindler Holding and ThyssenKrupp AG were raided in a January 28, 2004 inspection by the European Union Commission, and that these defendants were being investigated by European and antitrust investigators for participating in an international cartel to fix the price of elevators and escalators and elevator and escalator maintenance and repair services, and to rig bids for contracts for elevators and escalators and elevator and escalator maintenance and repair services, in violation of 15 U.S.C. §1.

31.    Plaintiff, in the exercise of reasonable diligence, could not have uncovered the violations set forth in this Complaint at any earlier time because of defendants' efforts to conceal the

unlawful activity from detection. Moreover, while plaintiff has diligently sought to protect itself from unlawful activity, plaintiff was unable to detect the secret activity, which by its nature is self-concealing, until it was disclosed publicly. Accordingly, the statute of limitations has been tolled and suspended with respect to any and all claims arising from the conspiracy until not earlier than February 2004.

32.    Defendants and their co-conspirators actively, intentionally and fraudulently concealed the existence of the conspiracy from plaintiff by one or more of the following affirmative acts, including acts in furtherance of the conspiracy:

(a)    Secret meetings and telephone calls in which prices and bids were discussed and agreed;

(b)    Instructing participants at meetings of the conspiracy not to maintain and/or destroy records of the meeting;

(c)    Instructing participants at meetings of the conspiracy to give inaccurate and untrue information to government investigators about the nature of the anti-competitive activity;

(d)    Instructing members of the conspiracy not to divulge the existence of the conspiracy to others not in the conspiracy;

(e)    Confirming the anti-competitive, unlawful plan to a small number of people and key officials at each defendant company and misrepresenting the reasons for unlawful conduct to their own employees;

(f)    Avoiding either references in documents, or the creation of documents otherwise created in the ordinary course of defendants' and co-conspirators' businesses, regarding conduct which would constitute an antitrust violation or anti-competitive act;

- 9 -

(g)    Participating in secret meetings and conversations to monitor and enforce adherence to the conspiracy; and

(h)    Falsely representing that prices were fair and competitive.

## CLAIM FOR RELIEF

### For Violation of 15 U.S.C. §1

33.    Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

34.    From a date unknown, but at least from January 2000 and continuing through January 28, 2004, defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C. §1.

35.    In furtherance of the unlawful conspiracy, each of the defendants and their co-conspirators has committed overt acts, including, *inter alia*:

(a)    Participating in meetings and conversations in Europe and the United States to discuss the prices of elevators sold in the United States and elsewhere;

(b)    Agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of elevators sold in the United States and elsewhere;

(c)    Agreeing in advance on bid prices and bid winners for elevator sales contracts, and for contracts for the provision of elevator maintenance and repair services; and

(d)    Discussing and exchanging price quotations to certain customers so as not to undercut the price of a competitor.

36.    As a direct and proximate result of the conspiracy, defendants have restrained competition and injured plaintiff and each Class member in its business and property in that each has paid a higher price for elevators or elevator maintenance and repair services than it would have paid absent the concerted unlawful activity.

37.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of §1 of the Sherman Act 15 U.S.C. §1.

38.    In the alternative, the conduct of defendants and their co-conspirators constitutes an unreasonable restraint of trade in violation of §1 of the Sherman Act 15 U.S.C. §1.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff on behalf of itself and all others similarly situated respectfully requests:

A.    That the Court certify a class pursuant to Federal Rule of Civil Procedure 23(b);

B.    That the unlawful combination and conspiracy alleged herein be adjudicated and decreed a *per se* violation or, in the alternative, a rule of reason violation, under §1 of the Sherman Act, 15 U.S.C. §1;

C.    That plaintiff and the Class recover damages against each defendant, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15;

D.    That plaintiff and the Class be awarded their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

E.    That plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

F.    That this Court permanently enjoin all continuing and future unlawful activity by defendants in violation of the antitrust laws; and

G.    That plaintiff be awarded such additional relief as the Court may deem proper.

- 11 -

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 12, 2004

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO (CT-1838)

_Curtis V. Trinko_

CURTIS V. TRINKO

16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: 212/490-9550
212/986-0158 (fax)

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
WILLIAM S. LERACH
MARK SOLOMON
BONNY E. SWEENEY
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Antitrust\elevator cpt.DOC

- 12 -

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CEDARBAUM

1775 HOUSING ASSOCIATES, On Behalf of
Itself and All Others Similarly Situated,

                              Plaintiff,

              -vs.-

UNITED TECHNOLOGIES
CORPORATION, OTIS ELEVATOR CO.,
KONE CORPORATION, KONE INC.,
SCHINDLER HOLDING LTD.,
SCHINDLER ELEVATOR CORPORATION,
THYSSENKRUPP AG and THYSSEN
ELEVATOR CAPITAL CORP.

                              Defendant(s).

Civil Action No.

04 CV 02785

**CLASS ACTION**

COMPLAINT FOR VIOLATIONS OF THE
SHERMAN ANTITRUST ACT

RECEIVED
APR 12 2004
U.S.D.C. S.D. N.Y.
CASHIERS

DEMAND FOR JURY TRIAL

Plaintiff, on behalf of itself and all others similarly situated, brings this Complaint against

defendants United Technologies Corporation, Otis Elevator Co., Kone Corporation, Kone Inc.,

Schindler Holding Ltd., Schindler Elevator Corp., ThyssenKrupp AG and Thyssen Elevator

Capital Corp., and their unnamed co-conspirators, and in support of its Complaint states as

follows:

## NATURE OF THIS ACTION

1.      This case arises out of a conspiracy among all defendants to fix prices and rig bids

for sales and service of elevators and escalators.  Plaintiff, on behalf of itself and the Class

described below, brings this action pursuant to §1 of the Sherman Act, 15 U.S.C. §1, and §4 of

the Clayton Act, 15 U.S.C. §15.

2.      Pursuant to Rule 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiff seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States on behalf of itself and all others similarly situated.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1391(b) and (c) and 15 U.S.C. §§15, 22 and 26.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c) and 15 U.S.C. §§15, 22, and 26.  Defendants and their co-conspirators have committed acts in furtherance of the conspiracy in this District, each defendant has conducted business and/or maintained offices with this District, as have certain of defendants' co-conspirators, as identified in this Complaint.

## THE PARTIES

5.      Plaintiff is a New York corporation with its headquarters located in New York, New York.  Plaintiff is the owner of the apartment buildings located at 107-129 East 126th Street, New York, New York, 10035.  During the period alleged in the Complaint, Plaintiff purchased elevators and/or elevator maintenance and repair services from defendants.  As a result of defendants' conspiracy, Plaintiff has been injured in its business and property because the prices it paid were artificially raised to anti-competitive levels by defendants and their co-conspirators.

6.      Defendant United Technologies Corporation ("UTC") is a Delaware corporation with its principal place of business in Hartford, Connecticut.  During the period set forth in this Complaint, United was engaged in the business of selling elevators and escalators and providing

elevator and escalator maintenance and repair services to customers in the United States and other countries.

7.     Defendant Otis Elevator Co. ("Otis") is a New Jersey corporation with its principal place of business in Farmington, Connecticut.  During the period set forth in this Complaint, Otis was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.  Otis is a wholly owned subsidiary of UTC.

8.     Defendant Kone Corporation ("Kone") is a Finnish company with its principal place of business in Helsinki, Finland.  During the period set forth in the Complaint, Kone was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

9.     Defendant Kone Inc. is a Delaware corporation with its principal place of business in Moline, Illinois and offices in New York, New York.  During the period set forth in this Complaint, Kone Inc. was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.  Kone Inc. is a wholly owned subsidiary of Kone Corporation.

10.     Defendant Schindler Holding Ltd. ("Schindler Holding") is a corporation organized and run under the laws of Switzerland with its principal place of business in Hergiswil, Switzerland.  During the period set forth in this Complaint, Schindler Holding was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

11.     Defendant Schindler Elevator Corporation ("Schindler") is a Delaware corporation with its principal place of business in Morristown, New Jersey.  During the period

set forth in this Complaint, Schindler was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries. Schindler is a wholly owned subsidiary of Schindler Holding.

12.    ThyssenKrupp AG is a German corporation with its principal place of business in Düsseldorf, Germany. During the period set forth in this Complaint, ThyssenKrupp AG was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries.

13.    Thyssen Elevator Capital Corp. ("Thyssen") is a Delaware corporation with its principal place of business in Whittier, California. During the period set forth in this Complaint, Thyssen was engaged in the business of selling elevators and escalators and providing elevator and escalator maintenance and repair services to customers in the United States and other countries. Thyssen is a wholly owned subsidiary of ThyssenKrupp AG.

14.    Various corporations and individuals not named as defendants in this Complaint participated as co-conspirators in the anti-competitive conduct alleged herein and performed acts and made statements in furtherance thereof.

15.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, it means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

16.    Various individuals, partnerships, and corporations not named in this Complaint have participated as co-conspirators in the violations of law alleged in this Complaint, and have performed acts in furtherance thereof. The identity of all co-conspirators is unknown at this time



and will require discovery. When their true identities are ascertained the Complaint shall be amended to reflect their true name and nature.

## CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action on behalf of itself and the members of the Class comprising:

> All persons or entities who purchased elevators or escalators or elevator or escalator repair and maintenance services from defendants or their unnamed co-conspirators in the United States, Europe and elsewhere from February 13, 2000 through the present (the "Class Period"). Excluded from the Class are defendants, their co-conspirators and their respective parents, subsidiaries and affiliates.

18.    The potential Class members number at least in the thousands and are so numerous that joinder of all members is impracticable.

19.    Plaintiff's claims are typical of other members of the Class who likewise sustained antitrust injury and were damaged through sales of elevators and escalators and elevator and escalator repairs and maintenance services at artificially high prices.

20.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased elevators and elevator maintenance and repair services from defendants and has a common and non-antagonistic interest in recovering money lost through unlawful activity and enjoining and deterring future unlawful activity in the elevator and escalator sales and services market. Plaintiff's undersigned counsel are experienced in antitrust and other complex class action litigation.

21.    Common questions of law and fact predominate over questions pertinent to only individual Class members. Questions of law and fact common to the Class members predominate over questions, if any, that may affect only individual members because defendants

have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in defendants' collusion. Common questions of law and fact include:

(a)    Whether defendants and others combined, conspired or contracted to fix prices of elevators and escalators and elevator and escalator maintenance and repair services at artificially high levels;

(b)    Whether defendants and others combined, conspired or contracted to rig bids for elevator and escalator sales and service contracts;

(c)    The dates of the formation of this illegal contract or conspiracy;

(d)    The identities of participants in the conspiracy;

(e)    The manner and means of the conspiracy;

(f)    Whether defendants and their co-conspirators fraudulently concealed their conspiracy;

(g)    Whether Class members have been damaged by the illegal conspiracy, including the degree to which prices paid by the Class are higher than those that would be paid in a market free from collusion; and

(h)    The appropriateness of injunctive relief to restrain future violations.

22.    Class action treatment is superior to other means of prosecuting these claims as the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication. Moreover, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication, effort or expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior

alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable and is one for which records exist.

23.   Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class.

## TRADE AND COMMERCE

24.   Defendants and their co-conspirators manufacture and sell elevators and escalators, and also contract with customers for elevator and escalator sales and for the provision of elevator and escalator maintenance and repair services.

25.   During the Class Period, the conduct of defendants and their co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States. The conduct of defendants and their co-conspirators has directly and substantially restrained such trade and commerce.

## ALLEGATIONS OF WRONGDOING

26.   Beginning at least as early as 2000 and continuing until now, defendants and their co-conspirators engaged in a combination and conspiracy to suppress and eliminate competition in the sale and service of elevators and escalators by fixing the price of elevators and escalators, rigging bids for contracts for elevator and escalator sales, and rigging bids for contracts for elevator and escalator maintenance and repair services. Defendants and their co-conspirators conducted the combination and conspiracy in the United States, Europe and elsewhere, and its effects were felt by plaintiff and Class members in the United States and elsewhere.

27.   The alleged combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators, the substantial

- 7 -

terms of which were to agree to fix and maintain prices for elevators and escalators and to coordinate bid prices for contracts for the sale of elevators and escalators and the provision of elevator and escalator maintenance and repair services in the United States and elsewhere.

28.    For purposes of forming and carrying out the charged combination and conspiracy, the defendants and co-conspirators did those things that they combined and conspired to do, including among other things:

(a)    Participating in meetings and conversations in Europe and the United States to discuss the prices of elevators and escalators sold in the United States and elsewhere;

(b)    Agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of elevators and escalators sold in the United States and elsewhere;

(c)    Agreeing in advance on bid prices and bid winners for elevator and escalator sales contracts, and for contracts for the provision of elevator and escalator maintenance and repair services; and

(d)    Discussing and exchanging price quotations to certain customers so as not to undercut the price of a competitor.

29.    The combination and conspiracy engaged in by the defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of §1 of the Sherman Act, 15 U.S.C. §1.

## FRAUDULENT CONCEALMENT

30.    Throughout the Class Period, defendants fraudulently concealed their unlawful conspiracy from plaintiff and Class members.  Plaintiff and other Class members had no knowledge of the contract, combination or conspiracy alleged in this Complaint; nor any facts

that might have led to the discovery thereof, in the exercise of reasonable diligence, until late January 2004. At that time, it was reported that the European offices of defendants Kone, Schindler Holding and ThyssenKrupp AG were raided in a January 28, 2004 inspection by the European Union Commission, and that these defendants were being investigated by European and antitrust investigators for participating in an international cartel to fix the price of elevators and escalators and elevator and escalator maintenance and repair services, and to rig bids for contracts for elevators and escalators and elevator and escalator maintenance and repair services, in violation of 15 U.S.C. §1.

31.    On March 17, 2004, the Wall Street Journal reported that, "UTC said some employees at its Otis unit's offices in Europe may have acted illegally..." and that, "its own internal investigation had given it reason to believe that some Otis employees in a small number of locations may have engaged in activities at a local level in violation of Otis and UTC policies and applicable competition law."

32.    Plaintiff, in the exercise of reasonable diligence, could not have uncovered the violations set forth in this Complaint at any earlier time because of defendants' efforts to conceal the unlawful activity from detection. Moreover, while plaintiff has diligently sought to protect itself from unlawful activity, plaintiff was unable to detect the secret activity, which by its nature is self-concealing, until it was disclosed publicly. Accordingly, the statute of limitations has been tolled and suspended with respect to any and all claims arising from the conspiracy until not earlier than February 2004.

33.    Defendants and their co-conspirators actively, intentionally and fraudulently concealed the existence of the conspiracy from plaintiff by one or more of the following affirmative acts, including the acts in furtherance of the conspiracy:

- 9 -

(a)     Secret meetings and phone calls in which prices and bids were discussed and agreed;

(b)     Instructing participants at meetings of the conspiracy not to maintain and/or destroy records of the meeting;

(c)     Instructing participants at meetings of the conspiracy to give inaccurate and untrue information to government investigators about the nature of the anti-competitive activity;

(d)     Instructing members of the conspiracy not to divulge the existence of the conspiracy to others not in the conspiracy;

(e)     Confirming the anti-competitive, unlawful plan to a small number of people and key officials at each defendant company and misrepresenting the reasons for unlawful conduct to their own employees;

(f)     Avoiding either references in documents, or the creation of documents otherwise created in the ordinary course of defendants' and co-conspirators' businesses, regarding conduct which would constitute an antitrust violation or anti-competitive act;

(g)     Participating in secret meetings and conversations to monitor and enforce adherence to the conspiracy; and

(h)     Falsely representing that prices were fair and competitive.

## CLAIM FOR RELIEF

### For Violation of 15 U.S.C. §1

33.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

34.    From a date unknown, but at least from January 2000 and continuing through January 28, 2004, defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C. §1.

35.    Furtherance of the unlawful conspiracy, each of the defendants and their co-conspirators has committed overt acts, including, *inter alia*:

    (a)    Participating in meetings and conversations in Europe and the United States to discuss the prices of elevators sold in the United States and elsewhere;

    (b)    Agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of elevators sold in the United States and elsewhere;

    (c)    Agreeing in advance on bid prices and bid winners for elevator sales contracts, and for contracts for the provision of elevator maintenance and repair services; and

    (d)    Discussing and exchanging prices quotations to certain customers so as not to undercut the price of the competitor.

36.    As a direct and proximate result of the conspiracy, defendants have restrained competition and injured plaintiff and each Class member in its business and property in that each has paid a higher price for elevators or elevator maintenance and repair services than it would have paid absent the concerted unlawful activity.

37.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of §1 of the Sherman Act 15 U.S.C. §1.

38.    In the alternative, the conduct of defendants and their co-conspirators and constitutes an unreasonable restraint of trade in violation of §1 of the Sherman Act 15 U.S.C. §1.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff on behalf of itself and all other similarly situated respectfully requests:

A.    That the Court certify a class pursuant to Federal Rule of Civil procedure 23(b);

B.    That the unlawful combination and conspiracy alleged herein be adjudicated and decreed a *per se* violation or, in the alternative, a rule of reason violation, under §1 of the Sherman Act, 15 U.S.C. §1;

C.    That plaintiff and the Class recover damages against each defendant, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15;

D.    That plaintiff and the Class be awarded their expenses and costs of suit including reasonable attorneys' fees to the extent provided by law;

E.    That plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

F.    That this Court permanently enjoin all continuing and future unlawful activity by defendants in violation of the antitrust laws; and

G.    That plaintiff be awarded such additional relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 12, 2004

By: _____

Fred T. Isquith, Esq.
Mary Jane Fait, Esq. (ME 1434)
**Wolf Haldenstein Adler Freeman**
**& Herz LLP**
270 Madison Avenue
New York, New York  10016

Mary Jane Fait, Esq.
**Wolf Haldenstein Adler Freeman**
**& Herz LLP**
656 West Randolph Street, Suite 500 W
Chicago, Illinois  60661

*Attorneys for Plaintiff*

doc #5158

- 13 -