# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANSHORN, LTD., On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 01178 (TPG) (e-filed)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD CLASS COUNSEL** |
| 1775 HOUSING ASSOCIATES, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 02785 (TPG) (e-filed) |

(Additional Case Captions are on Following Pages)

| | |
|---|---|
| TRIANGLE HOUSING ASSOCIATES, L.P., On Behalf of Itself and All Others Similarly Situated,<br><br>                                      Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>                                      Defendants. | Civil Action No. 04 CV 02786 (TPG) (e-filed) |
| ROCHDALE VILLAGE, INC., On Behalf of Itself and All Others Similarly Situated,<br><br>                                      Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>                                      Defendants. | Civil Action No.  04 CV 03225 (TPG) (e-filed) |

(Additional Case Captions are on Following Page)

| | |
|---|---|
| BRIMINGHAM BUILDING TRADES TOWERS, INC., On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 03229 (TPG) (e-filed) |
| RIVERBAY CORPORATION, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>UNITED TECHNOLOGIES CORPORATION, OTIS ELEVATOR CO., KONE CORPORATION, KONE INC., SCHINDLER HOLDING LTD., SCHINDLER ELEVATOR CORPORATION, THYSSENKRUPP AG and THYSSEN ELEVATOR CAPITAL CORP.,<br><br>Defendants. | Civil Action No. 04 CV 03308 (TPG) (e-filed) |

Plaintiff 1775 Housing Associates in civil action number 04 CV 02785 (TPG), plaintiff Triangle Housing Associates, L.P. in civil action number 04 CV 02786 (TPG), plaintiff Rochdale Village, Inc. in civil action number 04 CV 03225 (TPG), and plaintiff Riverbay Corp.

in civil action number 04 CV 03308 (TPG) (collectively, the "Moving Plaintiffs"), on behalf of themselves and all others similarly situated (the putative "Class Members"), submit this reply memorandum of law in further support of their joint motion for (1) consolidation of the related "Elevator" antitrust actions pending in this Court, and for (2) appointment of the New York law firm Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as interim lead class counsel for the plaintiffs in the consolidated actions.

Moving Plaintiffs' motion was opposed by plaintiff Birmingham Building Trades Towers, Inc. ("Birmingham"), which sued under the name "Brimingham Building Trade Towers, Inc." in civil action number 04 CV 03229 (TPG), and by plaintiff Transhorn Ltd. ("Transhorn") in civil action number 04 CV 01178 (TPG). Transhorn's opposition was joined by D.F. Chase, Inc., a plaintiff in an apparently related action in this District, civil action number 04 CV 03569, although D.F. Chase's complaint has not been made part of the record on this motion.[1]

Birmingham and Transhorn agree that consolidation of the numerous related elevator antitrust litigations will be necessary at some point – they do not specify when – and they oppose consolidation now solely on the ground that it is "premature." As shown below, their argument is fatuous. The first of these cases is already more than four months old, and defendants' counsel has advised it will be the subject of a dismissal motion this summer based on the Supreme Court's recent decision in *F. Hoffman La Roche Ltd. v. Empagran S.A.*, 72 U.S.L.W. 4501, 2004 U.S. District LEXIS 4174 (June 14, 2004), which limited the ability of

---

[1] According to Transhorn's memorandum of law, its opposition to the Moving Plaintiffs' motion is joined by two other plaintiffs in related actions recently filed in this District, Mountain Bay Construction and 435 Pacific, Inc. Transhorn does not identify those cases' civil action numbers or include their case captions on its opposition papers.

Based on conversations between counsel, the Moving Plaintiffs' motion is supported by a fifth plaintiff, Joseph M. Bennardi d/b/a NEDMAC Associates, Inc., who filed an action in the District of New Jersey and has whose counsel has stated an intention to transfer his case to this District.

4

foreign plaintiffs to seek redress under the Sherman Act in certain types of cases. Since the Class Members in each of these cases include foreign plaintiffs, the dismissal motion will impact all of the cases, and plaintiffs should submit a coordinated response. The coordinated response will require the leadership of appointed lead counsel. Further, consolidation of the cases will allow for the filing of a consolidated complaint against which the defendants can move – hence, there will be one pleading and one motion instead of nine.

Much additional work relating to class certification discovery and other preliminary matters needs to begin promptly in an organized and efficient manner. There is no legitimate reason to delay consolidating the nine cases now pending in this District based on the opposing plaintiffs' speculation that other related actions may be filed "around the country." The future is not knowable, but to date no party has filed an application with the Judicial Panel on Multidistrict Litigation, and the great likelihood is that any proposed MDL would be administered in this District, where many of the largest users of elevators and elevator repair services reside, and where 90 percent of the known currently pending cases have been filed. All the plaintiffs in these actions, in fact, including Transhorn and Birmingham and the other opponents of this motion, agree that these actions should be litigated in this District.

The opposing plaintiffs, in the event consolidation is granted, recommend appointment of interim lead class counsel other than Wolf Haldenstein. Birmingham proposes a Birmingham, Alabama firm while Transhorn favors a San Diego law firm – neither of whom has *any* significant experience representing the type of large users of elevators and elevator repair services that are and will be the plaintiffs with the greatest stakes in the outcome of these litigations. Wolf Haldenstein, on the other hand, has represented such plaintiffs in a multitude of

5

matters for nearly two decades through its real estate and real estate litigation department, and the four Moving Plaintiffs are regular clients of the firm.

The opposing plaintiffs, moreover, provide no data reflecting their size, number of elevators or other indications of their comparative stakes in these litigations vis-à-vis those of the Moving Plaintiffs, which are among the largest users of elevators and elevator repair services in the nation, if not the world. Moving Plaintiffs are undisputedly the largest aggrieved parties, and they plainly have the resources and experience to lead these litigations. They have carefully selected their counsel, Wolf Haldenstein, which is also recognized nationwide as one of the Country's premier antitrust class action firms. Hence, Wolf Haldenstein is uniquely qualified to prosecute these actions as lead counsel.

## ARGUMENT

### A.    Consolidation is not "Premature"

The opposing plaintiffs' concede that consolidation of these actions would "ultimately be appropriate" "in due course," *see* Transhorn Brief at 2; Birmingham Brief at § 2.A (the Birmingham Brief has no page numbers), but argue that consolidation is "premature" at this time. Unsurprisingly, their novel "prematurity" argument is not supported by a single statutory, rule, or case citation – or, for that matter, even reason, since both opposing plaintiffs agree that the cases should be consolidated eventually in this District. *See* Transhorn Brief at 2-3; Birmingham Brief at § 2.A. Consolidation should not be delayed because of speculation that other cases may possibly be filed elsewhere.

The Federal Rules of Civil Procedure provide that consolidation is appropriate as early as "[w]hen actions involving a common question of law or fact are *pending*." Fed. R. Civ. P. 42(a) (emphasis added). This language implies that related actions – even if only two are pending – can be consolidated as soon as the cases are filed, as long as doing so "may tend to

6

avoid unnecessary costs or delay." *Id*. *See also* 8 *Moore's Federal Practice* (3d ed. 2004) at § 42.11[1] (a decision on consolidation can be appropriate whenever two or more actions involving common issues of law or fact have been filed).

Indeed, "[a]ll related civil cases pending in the same court should initially be assigned to a single judge to determine whether consolidation, or at least coordination of pretrial proceedings, is feasible and is likely to reduce conflicts and duplication." *Manual for Complex Litigation* (4th ed.) (Federal Judicial Center 2004) at § 20.11 (hereafter "*MCL*"). Ideally, the consolidation issue should be considered at the initial Rule 16(b) conference. *Id.*

This Court has already recognized the related nature of the above captioned litigations and has ordered each of the actions assigned to Judge Griesa. Undoubtedly the other four cases pending in this District will be similarly assigned. A Rule 16(b) conference in these cases, which ordinarily should occur within 120 days (less than four months) after a complaint is filed, *see* Fed. R. Civ. P. 16(b), should be scheduled in relatively short order. The parties also must plan for and attend a Rule 26(f) conference at least three weeks before the Rule 16(b) conference is held. *See* Fed. R. Civ. P. 26(f).

The oldest of these cases, the *Transhorn* action, was filed in mid-February 2004, over four months ago. Counsel in that action have done nothing to move the cases along, other than to stipulate to extending the defendants' time to answer or move against the complaint until August 1, 2004. Much work needs to be done, with the largest stakeholders in charge, so that the cases can be expeditiously and efficiently moved forward. *See* Fed. R. Civ. P. 23(g), Advisory Committee Notes to 2003 amendments to subparagraph 23(g)(2)(A) (designation of interim counsel may be necessary because "it will usually be important for an attorney to take action to prepare for the certification decision" and "some discovery is often necessary for that

determination. It may also be important to make or respond to motions before certification . . . . Settlement [also] may be discussed before certification.")

The defendants will move to dismiss the actions in whole or part, and the various plaintiff class representatives should prepare a single, coordinated response rather than nine separate responses. Discovery should proceed. Class certification should be addressed. The damages suffered by the plaintiff class as a result of the defendants' apparent antitrust violations are monumental, and there is no sound reason for delaying the progression of these cases, especially given that even the opposing plaintiffs concede that consolidation is inevitable.

The opposing plaintiffs have not submitted any evidence, nor even a viable argument, that consolidating these cases now will lead to unnecessary costs, delay or inefficiency. The opposing plaintiffs' conjecture about a future MDL, therefore, is not a sustainable ground for delaying the inevitable consolidation of these cases until some unspecified future "appropriate juncture." *See* Transhorn Brief at 2.

### B. Appointing Wolf Haldenstein as Interim Lead Class Counsel Now is Appropriate and in the Best Interests of the Class

The opposing plaintiffs' contentions that appointing lead class counsel now is "premature" fails for the same reasons that their argument that consolidation is premature fails – since much work towards advancing these litigations is necessary, and coordination of those efforts would promote efficiency and avoid costly delay, it necessarily follows that lead counsel should be appointed to conduct those coordinated efforts. *See MCL* §§ 10.123, 10.22, 20.12, 30, 30.4. It would be enormously costly and wasteful to litigate any portion of these actions by competing plaintiffs and law firms acting without the restraint and discipline that would be imposed by a lead counsel. Preparing oppositions to dismissal motions and conducting class certification and/or merits discovery by way of several teams of lawyers rather than through the

8

coordination of lead counsel will lead increasingly to submissions of voluminous redundant papers, multiplicities of court room and deposition appearances and, ultimately, will contribute to exorbitant and wasteful demands for legal fees from a surfeit of competing law firms. Appointment of lead interim class counsel will enable highly qualified attorneys to protect and represent the interests of all the law firms' clients without waste of judicial and party resources.

The opposing plaintiffs' suggestion that the recent enactment of Rule 23(g) giving rise to the designation "interim" class counsel somehow implies that class counsel should not routinely be appointed in complex class litigations prior to class certification, *see* Transhorn Brief at 3, contradicts long-established practice. The substantive law favoring early appointment of class counsel where it is in the efficiency interests of the proposed class has not been changed by the creation of the new "interim" class counsel title. Indeed, in the central case opposing plaintiffs cite, *In re Terazosin Hydrochloride Antitrust Litig.*, 99-MDL-1317, 2004 U.S. Dist. LEXIS 6176 (S.D. Fla. April 8, 2004), the court appointed one firm to be what is now called "interim" lead counsel almost *four years* before class certification issues in that case were resolved, *see id.* at *99-100.

Wolf Haldenstein satisfies all the requirements for Interim Lead Class Counsel under Rule 23(g). Wolf Haldenstein has demonstrated that it is "'qualified, experienced, and generally able to conduct the . . . litigation'" on plaintiffs' behalf. *In re Agent Orange Product Liab. Litig.*, 996 F.2d 1425, 1435 (2d Cir. 1993) (quotation omitted). The firm is among the most experienced law firms in the Country in the prosecution of antitrust and other class actions, and it has repeatedly served with distinction as lead or co-lead counsel in such cases. *See In re Toys 'R Us Antitrust Litig.*, 191 F.R.D. 347, 351, 356 (E.D.N.Y. 2000) (plaintiffs' counsel, which included Wolf Haldenstein, were "highly skilled" and "experienced"); *In re Dynamic Random*

9

*Access Memory (DRAM) Antitrust Litigation*, No. M 02-1486, M.D.L. No. 1486 (N.D. Cal.). (appointing Wolf Haldenstein lead counsel in horizontal price fixing litigation); *In re Sulfuric Acid Antitrust Litigation*, No. 03-4576, M.D.L. No. 1536 (N.D. Ill.) (same). *See also In re Comdisco Secs. Litig.,* 150 F. Supp. 2d 943, 951, 953 (N.D. Ill. 2001) (Wolf Haldenstein's credentials "are impeccable"); *In re Nanophase Techs. Corp. Litig.*, 1999 U.S. Dist. LEXIS 16171, *19 n.5 (N.D. Ill. Sept. 30, 1999) (Wolf Haldenstein was "adequately demonstrated" to be suitable class counsel).

Wolf Haldenstein also has a leading commercial real estate practice and represents numerous large, putative Class Members that have collectively thousands of the elevators at issue in these cases and have expended hundreds of thousands to millions of dollars to buy elevators and elevator repair services for their buildings. Proposed Interim Lead Class Counsel therefore has a substantial interest in representing their long-term clients and the putative class as zealously as possible. As such, the requirements of Rule 23(g) are satisfied.

As previously shown, *see* Isquith Aff., ¶ 11, Wolf Haldenstein already represents class representatives in these cases that consist of some of the largest residential cooperatives in the country. Moving Plaintiff Riverbay Corporation owns and manages Co-Op City in the Bronx, which consists of 15,000 residential units and has more than 150 elevators. Moving Plaintiff Rochdale Village, Inc. has more than 5,000 residential units and has 121 elevators. These plaintiffs have suffered substantial economic injury as a result of defendants' antitrust violations and are dedicated to the swift prosecution of these cases. Wolf Haldenstein reports on these cases directly to the Board of Directors of these and two other proposed class representatives, and it has done so for years in all kinds of matters. These plaintiffs have the

greatest stake in these litigations, and their choice of lead interim class counsel should be a paramount consideration when making the appointment.

Opposing plaintiff Transhorn's suggestion that the type of clients Wolf Haldenstein represents in these cases is irrelevant under Rule 23(g)(1), *see* Transhorn Brief at 5 n.6, is simply wrong.  In addition to several factors specifically enumerated in the Rule, courts considering choice of lead class counsel are permitted to "consider any *other matter* pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(ii) (emphasis added).  The Advisory Committee Notes discussing other factors courts should consider specifically state that:  "Depending on the nature of the case, one important consideration might be the applicant's existing attorney-client relationship with the proposed class representative."  Fed. R. Civ. P. 23(g), Notes to 2003 amendment to subparagraph (2)(B). *See also* Bebchuk, "Litigation in a Free Society:  The Questionable Case for Using Auctions to Select Lead Counsel," 80 *Wash. U.L.Q.* 889, 892 (Fall 2002) (quality of chosen class counsel includes the "fit" and working relationship between counsel and lead plaintiffs).

Thus, Wolf Haldenstein's preexisting and continuing representation of and attorney-client relationship with many of the largest class representatives and other proposed class members, far from being irrelevant, is a significant factor favoring Wolf Haldenstein's appointment as lead interim class counsel.

The specifically enumerated factors to be considered under Rule 23(g) for appointment of lead counsel also support the notion that Wolf Haldenstein's long-term representation of the largest class representatives and class members tips the scales in Wolf Haldenstein's favor vis-à-vis the other two firms seeking the appointment.  Rule 23(g)(1)(C) provides that, among other things, "[t]he court must consider the work counsel has done in

11

*identifying* or investigating *potential claims* in the actions, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's *knowledge of the applicable law*, and the *resources counsel will commit* to representing the class." *In re Universal Service Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661, 684 (M.D. Kan. 2004) (paraphrasing Fed. R. Civ. P. 23(g)(1)(C)) (emphases added).

It cannot be disputed that Wolf Haldenstein (a) has worked to "identify[] . . . potential claims" of a substantial nature held by some of the largest stakeholders in these litigations, and (b) has vast "knowledge of the applicable law" concerning a variety of real estate, condominium or housing cooperative related issues of law and fact that will undoubtedly impact or become pertinent during discovery and trial of these complex litigations. And since it represents the largest stakeholders in these actions, the Court can be assured that Wolf Haldenstein and its clients will have the incentive to expend the resources necessary to bring these cases to a fruitful resolution for all class members.

Transhorn suggests that the Court should not "confuse" the lead plaintiff requirements of the Private Securities Litigation Reform Act with the requirements for appointing lead counsel under Rule 23(g). *See* Transhorn Brief at 5 n.6. But plaintiffs do not argue the PLSRA applies. Rather, plaintiffs argue that Rule 23(g) permits Courts considering lead counsel appointments in complex antitrust class actions to look at many factors, including the size of the proposed class representatives' comparative stakes in the consolidated actions and their attorney-client relationships with their preferred class counsel.[2] *See In re Scrap Metal Antitrust Litigation*, No. 1:02CV0844, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002)

---

[2] Indeed, last year Transhorn's counsel's predecessor firm, Milberg Weiss Bershad Hynes & Lerach LLP, took the same position the Moving Plaintiffs take here in connection with a lead counsel appointment motion in the *In re Carbon Black Antitrust Litigation*, MD No. 03-CV-10191-DPW (D. Mass.).

12

(appointing as lead counsel firm chosen by plaintiff with largest stake in litigation and ruling that fact one plaintiff filed the first case was not dispositive of the lead counsel appointment issue.)

Amended Rule 23(g)(2)(B) expressly provides that where "more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)(B). The Moving Plaintiffs do not question that the firm preferred by Transhorn, the San Diego firm Lerach Coughlin Stoia & Robbins LLP, has experienced attorneys capable of representing clients generally in antitrust matters and class actions. Likewise, the general capabilities of Birmingham's preferred firm, Whatley Drake, LLC, are not questioned for purposes of this motion. But there can be no serious room for debating that Wolf Haldenstein's New York-based practice, which has expertise both in complex antitrust class actions and the pertinent real estate law issues, and which represents the largest antitrust plaintiffs, is "hands down" the best qualified firm to represent the plaintiff class in these cases.

## CONCLUSION

For the above and all previously stated reasons, Movants respectfully request the Court to grant their Joint Motion for Consolidation and to Appoint Interim Class Counsel for Plaintiffs; to appoint Wolf Haldenstein Adler Freeman & Herz LLP, Interim Lead Class Counsel; to consolidate the cases presently in this District under one caption; and to consolidate cases that may be later filed in or transferred to this Court pursuant to 28 U.S.C. §§ 1404, 1407.

Dated: June 22, 2004

        Respectfully Submitted,

        WOLF HALDENSTEIN ADLER
          FREEMAN & HERZ LLP

        By: _____/s_____
           Fred Taylor Isquith (FI 6782)

Stuart M. Saft (SS 7775)
Alexander H. Schmidt (AS 8304)
270 Madison Avenue
New York, New York 10016
(212) 545-4600

Mary Jane Edelstein Fait (ME 1434)
656 West Randolph Street, Suite 500 West
Chicago, Illinois 60661
(312) 466-9200

*Attorneys for Plaintiffs in Nos.*
*04 CV 02785, 02786, 03225 and 03308*

363539

# CERTIFICATE OF SERVICE

I, Alexander H. Schmidt, hereby certify that on this 22nd day of June, 2004, I have caused the attached Reply Memorandum of Law in further support of Joint Motion for Consolidation and Appointment of Interim Lead Class Counsel to be served electronically on counsel of record and that I will, on the 23rd day of June, cause a true copy of to be delivered by first class mail to:

> LAW OFFICES OF CURTIS V. TRINKO, LLP
> 16 West 46th Street, Seventh Floor
> New York, New York 10036
> (212) 490-9550
>
>         -and-
>
> LERACH COUGHLIN STOIA
>   & ROBBINS LLP
> 401 B Street, Suite 1700
> San Diego, CA 92101
> (619) 231-1058
> *Attorneys for Transhorn, Ltd. Plaintiffs in*
>   *No. 04 CV 01178 (TPG)*
>
> FARUQI & FARUQI LLP
> 330 East 39th Street
> New York, NY 10016
> (212) 983-9330

14

-and-

WHATLEY DRAKE LLC
2323 Second Avenue North
Birmingham, AL  35203
(205) 328-9776
*Attorneys for Birmingham Building Trades Towers Plaintiffs*
 *in N*o. 04 CV 03229 (TPG)

Deborah M. Buell
CLEARY, GOTTLIEB, STEEN & HAMILTON
 One Liberty Plaza
New York, NY  10006
(212) 225-2000

-and-

Patricia M. McDermott
CLEARY GOTTLIEB STEEN & HAMILTON
2000 Pennsylvania Avenue, N.W., Suite 9000
Washington, D.C. 20006-1801
(202) 974-1500
*Attorneys for Defendant*
 *Otis Elevator Co.*

UNITED TECHNOLOGIES CORPORATION
United Technologies Building
Hartford, Connecticut 06101
Attn:  Legal Dept.
*Defendant*

Michael Even Jaffe
THELEN REID & PRIEST LLP
701 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C.  20004
(202) 508-4000
*Attorneys for Defendants*
  *Kone Inc. and Kone Corp.*

SCHINDLER HOLDING LTD.
Seestrasse 55
CH-6052 Hergiswil, Nidwalden, Switzerland
41-41-632-85-50
Attn:  Legal Dept.
*Defendant*

Kenneth M. Kramer
SHEARMAN & STERLING
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4900
*Attorneys for Defendant*
 *Schindler Elevator Corp.*

THYSSENKRUPP AG
August-Thyssen-Strabe 1
40211 Dusseldorf, Germany
Attn: Legal Department
*Defendant*

A. Paul Victor
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
*Attorneys for Defendant*
 *Thyssenkrupp Elevator Capital Corp.*

                                           /s
                             Alexander H. Schmidt (AS 8304)