UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                :
IN RE ELEVATOR AND ESCALATOR       :      MDL No. 1644
ANTITRUST LITIGATION                  :
                                :
                                :
                                :
------------------------------------------------------- x
                                :
IN RE ELEVATOR ANTITRUST          :      Master Docket No. 1:04 CV 01178 (TPG)
LITIGATION                          :      (ECF CASE)
                                :
                                :
                                :
                                :
------------------------------------------------------- x
                                :
This Document Relates To:           :      **ORAL ARGUMENT REQUESTED**
                                :
All Actions                            :
------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND CONSOLIDATED AMENDED COMPLAINT**

Dockets.Justia.com

**TABLE OF CONTENTS**

Page

INTRODUCTION................................................................................................ 1

I.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED
     PURSUANT TO RULE 12(b)(6) ............................................................... 4

     A.  Plaintiffs' Boilerplate Allegations Of International Price Fixing Still Fail To
         Meet The Pleading Standard ............................................................... 4

     B.  Plaintiffs' Boilerplate Allegations Of A Conspiracy To Monopolize Also Fail
         To Meet The Pleading Standard............................................................ 8

     C.  Plaintiffs' Allegations Of Unilateral Monopolization Are Legally Insufficient ...   10

         1.   There Is No Duty To Design Products For The Benefit Of Competitors .......   11

         2.   There Is No Duty To Sell To Competitors......................................   12

         3.   There Is No Duty To Install Competitors' Products ........................   14

     D.  Plaintiffs' New Factual Allegations Are Irrelevant...............................   15

II.  PLAINTIFFS' FOREIGN CLAIMS SHOULD BE DISMISSED PURSUANT TO
     RULE 12(b)(1)........................................................................   16

CONCLUSION ................................................................................   21

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Apex Oil Co. v. DiMauro*,
    822 F.2d 246 (2d Cir. 1987)..........................................................................    6

*Arbitron Co. v. Tropicana Prod. Sales, Inc.*,
    No. 91 Civ. 3697 (PKL), 1993 U.S. Dist. LEXIS 5587
    (S.D.N.Y. Apr. 28, 1993)..............................................................................    9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).......................................................................................    20

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).......................................................................................    5, 14

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962).......................................................................................    12

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
    996 F.2d 537 (2d Cir. 1993)..........................................................................    13

*Conley v. Gibson*,
    355 U.S. 41 (1957) ........................................................................................    7

*Copperweld v. Independence Tube*,
    467 U.S. 752 (1984).......................................................................................    15

*Corsearch, Inc. v. Thomson & Thomson*,
    792 F. Supp. 305 (S.D.N.Y. 1992) ...............................................................    11

*Credit Chequers Info. Servs. v. Credit Bureau Assocs.*,
    No. 98 Civ. 3868 (RPP), 1999 U.S. Dist. LEXIS 6084
    (S.D.N.Y. Apr. 28, 1999), *aff'd*, 205 F.3d 1322 (2d Cir. 2000) .................    8, 9

*de Atucha v. Commodity Exch., Inc.*,
    608 F. Supp. 510 (S.D.N.Y. 1985) ...............................................................    20

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*,
    241 F.3d 420 (5th Cir. 2001) ........................................................................    19, 20

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ........................................................................    8

**Page(s)**

*Elektra Entm't Group, Inc. v. Does 1-9*,
  No. 04 Civ. 2289 (RWS), 2004 U.S. Dist. LEXIS 23560
  (S.D.N.Y. Sept. 7, 2004) ........................................................................................... 10

*Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*,
  417 F.3d 1267 (D.C. Cir. 2005) ............................................................................... 19

*Ezekwo v. Am. Bd. of Internal Med.*,
  18 F. Supp. 2d 271 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 844 (2d Cir. 1999) ................. 1, 7

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155, 124 S. Ct. 2359 (2004) ....................................................................... 17, 18

*Floors-N-More, Inc. v. Freight Liquidators*,
  142 F. Supp. 2d 496 (S.D.N.Y. 2001) ........................................................................ 1, 7

*Furlong v. Long Island Coll. Hosp.*,
  710 F.2d 922 (2d Cir. 1983) ...................................................................................... 7

*Heart Disease Research Found. v. Gen. Motors Corp.*,
  463 F.2d 98 (2d Cir. 1972) ......................................................................................... 1, 7, 21

*Inflight Newspapers Inc. v. Magazines In-flight LLC*,
  990 F. Supp. 119 (S.D.N.Y. 1997) ............................................................................. 11, 12

*John's Insulation, Inc. v. Siska Constr. Co.*,
  774 F. Supp. 156 (S.D.N.Y. 1991) ............................................................................. 8

*Klebanow v. New York Produce Exch.*,
  344 F.2d 294 (2d Cir. 1965) ...................................................................................... 9

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
  No. 03 Civ. 10312 (HB)(DF), 2005 U.S. Dist. LEXIS 19788
  (S.D.N.Y. Sept. 19, 2005) .......................................................................................... 19

*Lehman v. Dow Jones & Co.*,
  783 F.2d 285 (2d Cir. 1986) ...................................................................................... 13

*Levitch v. Columbia Broad. Sys., Inc.*,
  495 F. Supp. 649, 675 (S.D.N.Y. 1980),
  *aff'd*, 697 F.2d 495 (2d Cir. 1983) ............................................................................. 9, 12, 14

                                                                    **Page(s)**

*Makarova v. United States,*
      201 F.3d 110 (2d Cir. 2000) ...................................................................    18

*Mountain View Pharmacy v. Abbott Laboratories,*
      630 F.2d 1383 (10th Cir. 1980) ...............................................................    10

*Mover's & Warehousemen's Ass'n of Greater N.Y., Inc. v.*
      *Long Island Moving & Storage Ass'n, Inc.,*
      No. 98 Civ. 5373 (SJ), 1999 U.S. Dist. LEXIS 20667
      (E.D.N.Y. Dec. 27, 1999) .......................................................................    1, 8

*New York v. Anheuser-Busch, Inc.,*
      811 F. Supp. 848 (E.D.N.Y. 1993) .........................................................    13

*North Jersey Secretarial School v. McKiernan,*
      713 F. Supp. 577 (S.D.N.Y. 1989) .........................................................    7

*Nynex Corp. v. Discon, Inc.,*
      525 U.S. 128 (1998) ................................................................................    8

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.,*
      797 F.2d 370 (7th Cir. 1986) ...................................................................    14

*Pergo, Inc. v. Alloc, Inc.,*
      262 F. Supp. 2d 122 (S.D.N.Y. 2003)......................................................    10

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
      124 F.3d 430 (3d Cir. 1997) ....................................................................    13

*Rutman Wine Co. v. E & J Gallo Winery,*
      829 F.2d 729 (9th Cir. 1987) ...................................................................    9

*Shipping Fin. Servs. Corp. v. Drakos,*
      140 F.3d 129 (2d Cir. 1998) ....................................................................    18

*Sniado v. Bank Austria AG,*
      378 F.3d 210 (2d Cir. 2004)......................................................................    19, 21

*Stephens v. CMG Health,*
      No. 96 Civ. 7798 (NRB)(KMW), 1997 U.S. Dist. LEXIS 23797
      (S.D.N.Y. July 22, 1997), *adopted,* 1998 U.S. Dist. LEXIS 22929
      (S.D.N.Y. May 12, 1998), *aff'd,* 165 F.3d 14 (2d Cir. 1998) ...................    7

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.,*
      346 U.S. 537 (1954).................................................................................    6

|  | Page(s) |
|---|---|
| *Turicentro, S.A. v. Am. Airlines, Inc.*, <br> 303 F.3d 293 (3d Cir. 2002) ................................................................................. | 17, 20 |
| *Twombly v. Bell Atl. Corp.*, <br> No. 03-9213, --- F.3d ---, 2005 U.S. App. LEXIS 21390 <br> (2d Cir. Oct. 3, 2005) ........................................................................................... | 6, 7 |
| *United States v. Colgate & Co.*, <br> 250 U.S. 300 (1919)............................................................................................... | 12 |
| *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, <br> 540 U.S. 398 (2004)............................................................................................... | 11, 12, <br> 13, 14 |
| *Williamson Oil Co. v. Philip Morris USA*, <br> 346 F.3d 1287 (11th Cir. 2003) ............................................................................ | 5 |
| *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, <br> No. 00 Civ. 5663 (MBM), 2001 U.S. Dist. LEXIS 18831 <br> (S.D.N.Y. Nov. 19, 2001) ..................................................................................... | 5, 21 |

## FEDERAL RULES AND STATUTES

**Page(s)**

Fed. R. Civ. P. 8(a) ................................................................................................. 7

Fed. R. Civ. P. 12(b)(1)......................................................................................... 1, 16

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 16, 21

Fed. R. Civ. P. 20.................................................................................................. 10

15 U.S.C. § 1......................................................................................................... 4, 8

15 U.S.C. § 2......................................................................................................... 3, 8, 9, 10

15 U.S.C. § 6a....................................................................................................... 17, 18

## MISCELLANEOUS

3 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 709b2
    (2d ed. 2002) ................................................................................................. 13

3A Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 773b3
    (2d ed. 2002) ................................................................................................. 11

9 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 1716a3
    (2d ed. 2004) ................................................................................................. 13

Defendants United Technologies Corporation, Otis Elevator Company, Kone Corporation, Kone Inc., Schindler Holding Ltd., Schindler Elevator Corporation, ThyssenKrupp AG, Thyssen Elevator Capital Corporation, and ThyssenKrupp Elevator Corporation respectfully submit this Memorandum of Law in support of their motion to dismiss the Second Consolidated Amended Class Action Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to dismiss the claims of the foreign plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants respectfully request oral argument on this motion.

## INTRODUCTION

A bare bones allegation of conspiracy does not state a claim under the U.S. antitrust laws. *See, e.g.*, *Ezekwo v. Am. Bd. of Internal Med.*, 18 F. Supp. 2d 271, 277 (S.D.N.Y. 1998) ("Conclusory allegations of antitrust violations are simply not enough."), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 501 (S.D.N.Y. 2001) ("The plaintiff must do more than allege the existence of a conspiracy—it must allege some facts in support of the claim."); *Mover's & Warehousemen's Ass'n of Greater N.Y., Inc. v. Long Island Moving & Storage Ass'n, Inc.*, No. 98 Civ. 5373 (SJ), 1999 U.S. Dist. LEXIS 20667, at *16 (E.D.N.Y. Dec. 27, 1999) (same); *see also Heart Disease Research Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972) (affirming dismissal of complaint involving bare assertion of conspiracy).

Bare bones, formbook allegations of conspiracy are precisely what plaintiffs have made in their Second Consolidated Amended Class Action Complaint (the "Second Amended Complaint" or "S.A.C.") (Ex. A).[1]

---

[1] Exhibits are attached to the Declaration of Leah Brannon, dated October 21, 2005.

Twenty months ago, a London building owner filed the first class action in this Court. The filing came just ten days after a press report about a European Commission investigation into possible price fixing in the elevator industry in four countries in Europe. That complaint, like all of the complaints that followed it, alleged the existence of a global price fixing conspiracy in the elevator industry but offered nothing more than conclusory statements in support of that claim.

In January 2005, this Court found that the First Consolidated Amended Complaint was no more than a "formbook" pleading and told the plaintiffs that some specificity had to be added to their allegations before their case could proceed. After the January status conference, many of the plaintiffs re-evaluated their case and took the unusual and telling measure of withdrawing their complaints. Fewer than half of the original complaints were consolidated into the July 2005 Second Amended Complaint.

The Second Amended Complaint again fails to meet the pleading standard. It alleges an all-encompassing conspiracy spanning the United States and Europe involving sales of all new elevators and all elevator maintenance service contracts from February 13, 2000 through the present. *See* S.A.C. ¶ 32. This case would cover hundreds of thousands of localized bids for new elevators and elevator service contracts generated by countless local offices across two continents.[2]

Yet the Second Amended Complaint does not contain a factual predicate supporting its claims. In an effort to disguise this failing, plaintiffs add pages to their complaint by re-labeling their price fixing allegations as a "conspiracy to monopolize" under Section 2 of

---

[2] Plaintiffs allege that the number of purchasers of elevators and elevator service in the United States and Europe is "at least in the thousands." S.A.C. ¶ 33. Further, plaintiffs acknowledge (in at least 15 different paragraphs in the Second Amended Complaint) that elevators and elevator service are sold on the basis of individualized bids. *See, e.g.*, S.A.C. ¶ 59.

2

the Sherman Act, 15 U.S.C. § 2, and by adding wholly inadequate allegations of unilateral monopolization. These cosmetic changes add no substance to plaintiffs' bare bones assertions of conspiracy.

Plaintiffs' failure to provide even the thinnest factual predicate to the Second Amended Complaint is particularly striking given that they have had more than 20 months from the filing of their first complaint to do so. In light of plaintiffs' repeated failure to comply with the pleading standard, the Second Amended Complaint should be dismissed with prejudice.

A subset of plaintiffs' claims should also be dismissed for the additional and independent reason that the Court lacks subject matter jurisdiction over those claims involving alleged foreign injury.

I.    **THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)**

The Second Amended Complaint includes four types of allegations: (1) the same generic assertions of price fixing and market allocation that this Court found insufficient in January 2005; (2) new, equally sparse assertions of a conspiracy to monopolize; (3) plainly inadequate claims of unilateral monopolization; and (4) a series of miscellaneous, irrelevant factual allegations.[3]  As explained below, none of the allegations in the Second Amended Complaint is sufficient to state a claim upon which relief may be granted.

A.    **Plaintiffs' Boilerplate Allegations Of International Price Fixing Still Fail To Meet The Pleading Standard**

Plaintiffs allege in Count I of the Second Amended Complaint that defendants engaged in a conspiracy to fix prices and allocate markets for elevators and related repair and maintenance services in the United States and Europe, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  *See, e.g.,* S.A.C. ¶¶ 77-78.

As in the prior complaint, the only non-generic allegations related to these claims are plaintiffs' references to a localized investigation of price fixing in the elevator industry in four countries in Europe.  *Compare* S.A.C. ¶¶ 66-69 *with* First Amended Complaint ¶¶ 30-32 (Ex. B).[4]  The Court has already found these allegations to be insufficient to support plaintiffs' claims of a vastly broader conspiracy involving U.S. markets.  *See* Transcript of January 13, 2005 Conference before the Hon. Thomas P. Griesa at 6:19-6:20 (Ex. C).

---

[3] Plaintiffs' 36-page Second Amended Complaint is jumbled and in many areas difficult to comprehend. Defendants have made a good faith attempt to group plaintiffs' allegations into four comprehensible categories for purposes of this memorandum.

[4] The First Amended Complaint was mis-numbered. This citation refers to the second set of paragraphs numbered 30-32 in that complaint.

4

In an effort to avoid a second dismissal, plaintiffs have padded their price fixing claims in the Second Amended Complaint with new factual allegations of conduct that is perfectly lawful, such as attending trade association meetings. *See, e.g.*, S.A.C. ¶¶ 47-48 ("Company executives ... often attend industry, trade association and social functions together, creating ample opportunities for Defendants to meet and discuss pricing and bidding practices"). These new allegations are clearly insufficient to state a claim. *See, e.g., Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 U.S. Dist. LEXIS 18831, at *41 (S.D.N.Y. Nov. 19, 2001) ("[A] conspiracy will not be inferred from participation in a trade association."). Indeed, were the contrary true hundreds of industries would be open to exploratory discovery in massive multi-party price fixing actions.

Plaintiffs also allege that the "market for sales and service of elevators in the United States" is an oligopoly. *See* S.A.C. ¶¶ 45-47.[5] It is well established that allegations of oligopoly are insufficient to support an antitrust claim. *See, e.g., Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1306 (11th Cir. 2003).

Finally, plaintiffs allege that "[d]efendants...engage in standardized industry practices that make collusion more feasible and effective" including issuance of "standard price lists and contracts for maintenance and repair of elevators, which include similar, if not identical, language and terms." S.A.C. ¶ 49. Plaintiffs do not specify what allegedly "similar terms"

---

[5] Plaintiffs make a number of conflicting claims regarding market definition. Although in paragraph 47 they allege a "market for sales and service of elevators in the United States," elsewhere they allege both smaller and larger markets. *Compare* S.A.C. ¶ 123 (alleging a separate "U.S. market for service contracts on Thyssen elevators") *with* ¶ 60 (asserting that Thyssen has power in the market for maintenance "in the New York region") *with* ¶ 61 (alleging that "Defendants have viewed and treated the market for sales and service of elevators as a global market"). For purposes of this motion, defendants will not address the merits of any of plaintiffs' various market definitions.

appear in defendants' service contracts, even though this should be a fact easily within the grasp of plaintiffs, most of whom claim to be purchasers of elevator service.[6] More important, it is well established that allegations of parallel conduct standing alone do not state an antitrust violation. *See, e.g., Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 541 (1954); *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253-54 (2d Cir. 1987) (affirming dismissal of antitrust claim based on parallel conduct).

The Second Circuit recently confirmed that, in a case alleging a Sherman Act violation based on parallel conduct, the plaintiff must provide "a sufficient supporting factual predicate" for its claims. *See Twombly v. Bell Atl. Corp.*, No. 03-9213, --- F.3d ---, 2005 U.S. App. LEXIS 21390, at *41 (2d Cir. Oct. 3, 2005). The court in *Twombly* ultimately concluded that the case could proceed because the complaint there contained a sufficient supporting factual basis for its claims.[7] Here, however, plaintiffs have made only a blanket assertion of unspecified "similar" conduct, and simply have not supplied the factual predicate required for them to proceed with their claims. *See id.* at *45 (citing *Levitch v. Columbia Broad. Sys., Inc.*, 495 F. Supp. 649, 675 (S.D.N.Y. 1980), *aff'd*, 697 F.2d 495 (2d Cir. 1983)).

It is fundamental that, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must give the defendant "fair notice of what the plaintiff's claim is and the grounds

---

[6] Plaintiffs' reference to price lists is odd. Plaintiffs allege in at least 15 other paragraphs in the Second Amended Complaint that elevators and elevator service are sold based on individualized bids, not based on any type of published prices.

[7] For example, in *Twombly*, the complaint described the precise parallel behavior of defendants (even attaching as an exhibit a map showing exclusive territories), explained in detail why this behavior would not be in the economic interests of the defendants absent collusion, and introduced additional supporting evidence, including a statement by the Chief Executive Officer of one of the defendants supporting the plaintiffs' claim. *See id.* at *5-*9.

upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[8] *See also Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 927 (2d Cir. 1983) (Rule 8 "does not permit conclusory statements to substitute for minimally sufficient factual allegations"); *North Jersey Secretarial School v. McKiernan*, 713 F. Supp. 577, 584 (S.D.N.Y. 1989) ("Even notice pleading requires that facts be pleaded to support a conspiracy claim.") (citations omitted).

Consistent with these principles, courts have routinely dismissed complaints based on the sort of non-specific allegations at issue here. For example, in *Stephens v. CMG Health*, No. 96 Civ. 7798 (NRB)(KMW), 1997 U.S. Dist. LEXIS 23797 (S.D.N.Y. July 22, 1997), *adopted*, 1998 U.S. Dist. LEXIS 22929 (S.D.N.Y. May 12, 1998), *aff'd*, 165 F.3d 14 (2d Cir. 1998) (summary order), the court dismissed a case involving price fixing allegations strikingly similar to those in the Second Amended Complaint. As the court explained:

> The only specifics provided are that defendants "joined together to agree on a common course of action seeking to perpetuate and maintain the system that had been created," that defendants "met together on numerous occasions" to communicate information regarding fees and other terms, and that defendants insured the reaching of and adherence to "agreements" through membership in and activities related to professional associations.

*Id.* at *16 (citations omitted).

In short, plaintiffs' conclusory assertions that defendants engaged in "price fixing," divorced from any specific factual allegations, are plainly insufficient to satisfy the Federal Rules. *Heart Disease Research Found.*, 463 F.2d at 100; *see also Twombly*, --- F.3d ---, 2005 U.S. App. LEXIS 21390, at *27 (quoting *Heart Disease*); *Ezekwo*, 18 F. Supp. 2d at 277 ("Conclusory allegations of antitrust violations are simply not enough."); *Floors-N-More, Inc.*, 142 F. Supp. 2d at 501 ("The plaintiff must do more than allege the existence of a conspiracy—it

---

[8] Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

must allege some facts in support of the claim."); *Mover's & Warehousemen's Ass'n of Greater N.Y., Inc.*, 1999 U.S. Dist. LEXIS 20667, at *16 (same); *Credit Chequers Info. Servs. v. Credit Bureau Assocs.*, No. 98 Civ. 3868 (RPP), 1999 U.S. Dist. LEXIS 6084, at *22 (S.D.N.Y. Apr. 28, 1999) (same), *aff'd*, 205 F.3d 1322 (2d Cir. 2000); *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 163 (S.D.N.Y. 1991) (same).

Because plaintiffs' Section 1 claims do not meet the pleading standard, Count I should be dismissed.

**B.    Plaintiffs' Boilerplate Allegations Of A Conspiracy To Monopolize Also Fail To Meet The Pleading Standard**

Plaintiffs allege in Count II of their Second Amended Complaint that defendants conspired to monopolize "the market for sales and service of elevators sold in the United States" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. S.A.C. ¶ 83. These allegations are simply a repackaging of plaintiffs' other claims under a new label: Plaintiffs recite the same generic claims set forth in Count I of the Second Amended Complaint and re-label them a "conspiracy to monopolize." *Compare* S.A.C. ¶ 78 *with* ¶ 85. Plaintiffs also seek to repackage their unilateral claims from Counts III-X of the complaint and call them a "conspiracy to monopolize." *See id.* ¶ 58 (after describing purported unilateral antitrust violations by each defendant, simply asserting that defendants acted "collectively").

Courts have repeatedly rejected similar attempts by plaintiffs to disguise faulty antitrust claims as "conspiracies to monopolize." For example, in *Nynex Corp. v. Discon, Inc.*, 525 U.S. 128 (1998), the Supreme Court explained that the plaintiff could not proceed on its conspiracy to monopolize claim after having failed to state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* at 139 (citing 3 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 651e, at 81-82 (1996)); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 211

(4th Cir. 2002); *Credit Chequers Info. Servs.*, 1999 U.S. Dist. LEXIS 6084, at *40 (dismissing

conspiracy and conspiracy to monopolize claims as conclusory and insufficient). Similarly, in

cases initially brought under Section 2 of the Sherman Act, 15 U.S.C. § 2, courts have rejected

attempts to disguise unilateral antitrust claims as "conspiracies to monopolize." *See, e.g.*,

*Levitch v. Columbia Broad. Sys., Inc.*, 495 F. Supp. 649, 673 (S.D.N.Y. 1980), *aff'd*, 697 F.2d

495 (2d Cir. 1983) ("[W]hen stripped of the bald charge of conspiracy, [the] charge amounts to

nothing more than a reassertion of plaintiff's [unilateral] monopolization claims."); *Arbitron Co.*

*v. Tropicana Prod. Sales, Inc.*, No. 91 Civ. 3697 (PKL), 1993 U.S. Dist. LEXIS 5587, at *32

(S.D.N.Y. Apr. 28, 1993) (dismissing conspiracy to monopolize claim for lack of factual

predicate).

To the extent that plaintiffs here are alleging any sort of conspiracy among the

defendants, their claims are, once again, wholly conclusory. All that the Second Amended

Complaint offers in support of an alleged "conspiracy" are the same formbook allegations

discussed above. *See, e.g.*, S.A.C. ¶ 59 (alleging that defendants conspired by "allocating

customers through coordinating bids"). There is not one specific bid mentioned, not one

suspicious pattern discussed, not a single fact offered to support this claim.

As discussed in Section A above, under the law of this Circuit a plaintiff <u>must</u>

assert facts that support the existence of a claimed conspiracy. *See, e.g.*, *Klebanow v. New York*

*Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965) ("A mere allegation that defendants violated

the antitrust laws as to a particular plaintiff and commodity no more complies with Rule 8 than

an allegation which says only that a defendant made an undescribed contract with the plaintiff

and breached it, or that a defendant owns a car and injured plaintiff by driving it negligently.")

(citing 2 Moore, Federal Practice § 8.13 (2d ed. 1964)); *accord Rutman Wine Co. v. E. & J.*

9

*Gallo Winery,* 829 F.2d 729, 736 (9th Cir. 1987) ("The pleader may not evade the[] requirements

by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a

violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the

language of antitrust.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106

(7th Cir. 1984)); *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1388 (10th

Cir. 1980) ("A blanket statement that twenty-eight defendants have conspired to fix prices on

drug sales to thirteen plaintiffs does not provide adequate notice for responsive pleading.").

   Because plaintiffs' bald assertions of a conspiracy to monopolize do not meet the

pleading standard, Count II should likewise be dismissed.

C. **Plaintiffs' Allegations Of Unilateral Monopolization Are Legally Insufficient**

   Counts III-X of the Second Amended Complaint allege that defendants

<u>individually</u> monopolized or attempted to monopolize the maintenance of their own elevators in

violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[9] These claims, which appear to have

been added to provide bulk to plaintiffs' bare bones conspiracy claims, are legally insufficient.

   The allegations in support of Counts III-X can be grouped into three general

categories of supposedly unlawful actions. Plaintiffs allege that each defendant: (1) designs its

products so that those products are difficult to copy; (2) refuses to sell diagnostic software or

repair parts to competitors; and (3) refuses to install competitors' elevator controllers. *See*

---

[9] Without the formbook allegations of conspiracy addressed above, Counts III-X, which arise out of distinct transactions or occurrences, are simply separate claims against separate defendants and are therefore inappropriate for a multi-defendant action. *See* Fed. R. Civ. P. 20; *see also Elektra Entm't Group, Inc. v. Does 1-9*, No. 04 Civ. 2289 (RWS), 2004 U.S. Dist. LEXIS 23560, at *14-16 (S.D.N.Y. Sept. 7, 2004) (granting motion to sever defendant where transactions underlying plaintiff's claims against moving defendant were distinct from transactions involving other defendants); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (same).

S.A.C. ¶¶ 50-57. Under well-settled law, none of the acts that plaintiffs allege in support of their

claims in Counts III-X is an antitrust violation.

### 1. There Is No Duty To Design Products For The Benefit Of Competitors

Plaintiffs allege that "[e]ach [d]efendant deliberately designs its own elevators in

order to make it more difficult for any other company to service or maintain those elevators ..."

S.A.C. ¶ 52; *see also id.* ¶ 55. Plaintiffs also allege that independent elevator maintenance

companies can only repair defendants' elevator systems by "reverse engineer[ing] the necessary

software and service tools, which is usually prohibitively costly and time-consuming." *Id.* ¶ 54.

Finally, plaintiffs allege that defendants make their "manuals [and] schematic diagrams ...

difficult or impossible for their competitors to obtain." *Id.* ¶ 50.

Even if these allegations were true, there is no obligation under the antitrust laws

to design products for the benefit of competitors. To the contrary, firms may "establis[h] an

infrastructure that renders them uniquely suited to serve their customers." *Verizon*

*Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Furthermore, the antitrust laws do not abridge firms' well-established right to protect

copyrighted material and trade secrets. *See Corsearch, Inc. v. Thomson & Thomson*, 792 F.

Supp. 305, 322 (S.D.N.Y. 1992) ("Under the copyright laws, the copyright owner has a right to

license the use of its intellectual property and to terminate or limit that use in such a manner as it

deems appropriate."); *Inflight Newspapers Inc. v. Magazines In-flight LLC*, 990 F. Supp. 119,

140 (S.D.N.Y. 1997). Indeed, any other rule would undermine the innovation and competition

that the antitrust laws are designed to protect. *See, e.g., Trinko*, 540 U.S. at 407; 3A Phillip E.

Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 773b3, at 204 (2d ed. 2002) ("[G]ranting the

plaintiff's request [for access to its competitor's equipment] reduces the incentive of others to

11

build their own [equipment].”); *Inflight Newspapers Inc.*, 990 F. Supp. at 139 (“Only through

protection of [intellectual property rights], however, will individuals and businesses be

encouraged to pursue new productive ideas, the result of which will ultimately enure [sic] to the

betterment of society.”).

These considerations are squarely implicated by this case. Defendants have no

obligation to give away the results of their research to their many competitors.[10] Enforced

sharing would undermine defendants’ incentives to invest in research in the first place, to the

detriment of elevator consumers and passengers. The antitrust laws impose no such duty, and

plaintiffs’ product design allegations therefore fail to state a claim.

## 2.  **There Is No Duty To Sell To Competitors**

Plaintiffs also repeatedly suggest that defendants violated the antitrust laws by

refusing to sell proprietary service tools and spare parts to competing elevator service companies.

S.A.C. ¶¶ 52-53, 57. It is well-established, however, that firms have no general duty to deal with

their competitors. *See, e.g.*, *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (“[T]he

[Sherman] [A]ct does not restrict the long recognized right of a trader or manufacturer engaged

in an entirely private business, freely to exercise his own independent discretion as to parties

with whom he will deal.”); *Trinko*, 540 U.S. at 408; *Levitch*, 495 F. Supp. at 672.[11] It is equally

---

[10] Indeed, plaintiffs themselves assert that a “remote monitoring” tool that Otis has developed saves costs “of regular visits by technicians who have gone from monthly to twice a year.” S.A.C. ¶ 56. This, in turn, allows Otis to provide service at a lower price to the customer, which plaintiffs allege makes it more likely that customers will buy service from Otis. *See id.* (remote monitoring tool lowers costs and “further ties customers” to Otis service). The antitrust laws exist to protect “competition, not competitors.” *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Thus, even if competitors were injured they could not validly complain about defendants’ low pricing. Moreover, plaintiffs are not competitors: They claim to be elevator owners, and should have benefited from defendants’ lower priced service. *See, e.g.*, S.A.C. ¶¶ 6-11 and 13-17.

[11] There is only a “limited exception” to the general rule that a firm has no duty to deal with others, which may arise when a monopolist terminates a voluntary and profitable course of dealing with a rival. *Trinko*, 540 U.S. at 409. That exception has not been alleged by plaintiffs.

clear that firms have no duty to license their intellectual property to competitors. *See, e.g.*, 3

Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 709b2, at 222 (2d ed. 2002) ("An

unconditional refusal to license, just like any unconditional unilateral refusal to sell, is in and of

itself not an antitrust violation and, as such, requires no business justification."). Because the

conduct alleged is not an antitrust violation, defendants have no duty to identify a business

justification for their alleged refusal to sell.[12] *See, e.g.*, *Capital Imaging Assocs., P.C. v.*

*Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir.1993) (citing 7 Phillip Areeda,

*Antitrust Law* ¶ 1502, at 371 (1986)).

In contrast to their allegations that defendants refuse to sell various products,

plaintiffs also allege that defendants do sell repair parts, but do so at "an inflated price."

S.A.C. ¶ 57. The antitrust laws do not establish any form of price regulation and the courts have

repeatedly emphasized that they cannot be asked, under the guise of the antitrust laws, to

perform as a regulatory agency. *See, e.g.*, *Trinko*, 540 U.S. at 415 ("'No court should impose a

duty to deal that it cannot explain or adequately and reasonably supervise. The problem should

be deemed irremedia[ble] by antitrust law when compulsory access requires the court to assume

the day-to-day controls characteristic of a regulatory agency.'") (quoting Phillip E. Areeda,

---

[12] Even assuming any defendant here refuses to sell its proprietary tools, refuses to install competitor products, or takes any other action to protect its intellectual property, it would be reasonable for a company to do so in order to protect the quality of its products or to prevent free-riding on its investment. *See* 9 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law* ¶ 1716a3, at 157 (2d ed. 2004) (action to protect quality "benefits consumers as well as the producer."); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 433 (3d Cir. 1997) (affirming dismissal of complaint where challenged conduct was undertaken to protect product quality); *New York v. Anheuser-Busch, Inc.*, 811 F. Supp. 848, 878 (E.D.N.Y. 1993) (dismissing complaint where challenged conduct was undertaken to reduce free-riding and ensure product quality) Indeed, certain steps must be taken to prevent free-riding or else a product will lose its protection as a trade secret. *See, e.g.*, *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 299 (2d Cir. 1986) ("[T]he courts require that the possessor of a trade secret take reasonable measures to protect its secrecy.") (quoting 1 Milgrim on Trade Secrets § 2.04, at 2-36).

13

*Essential Facilities: An Epithet in Need of Limiting Principles*, 58 Antitrust L.J. 841, 853 (1989)); *Brooke Group Ltd.*, 509 U.S. at 223.

        Plaintiffs have alleged, at most, a unilateral and unconditional refusal to sell, and such an allegation simply does not state an antitrust claim. *See, e.g.*, *Trinko*, 540 U.S. at 410 (reversing denial of defendant's motion to dismiss refusal to deal claim). Plaintiffs' purported refusal to deal claims should be dismissed.

    3. **There Is No Duty To Install Competitors' Products**

        Finally, plaintiffs allege that "[d]efendants either refuse to install [a competitor's] equipment or otherwise discourage such requests." S.A.C. ¶ 55. But a firm has no duty to install or otherwise promote the products of a rival over its own products. *See, e.g.*, *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d 370, 379 (7th Cir. 1986) ("Refusing to act as your competitor's sales agent is not an unnatural practice engaged in only by firms bent on monopolization."); *Levitch*, 495 F. Supp. at 677 ("It is one thing for a company to bear the risk of the marketability of its own production, it is quite different to *compel* that company to bear the risk of the marketability of another's production.") (emphasis added). Plaintiffs' "refusal to install" allegations do not state a valid antitrust claim.

        In contrast to their allegations that defendants refuse to install competitors' products, plaintiffs also allege that defendants do install rivals' equipment, but only at an "expensive" price. S.A.C. ¶ 55. As discussed above, the antitrust laws are not a regulatory scheme and do not impose any duty on firms to buy, sell, or trade their goods or services at any particular price.

14

In sum, none of plaintiffs' allegations in support of their claims against the individual defendants in Counts III-X states a valid antitrust claim. Counts III-X of the complaint should therefore be dismissed.

## D.    Plaintiffs' New Factual Allegations Are Irrelevant

Plaintiffs also attempt to add bulk to the insufficient price fixing and market allocation claims from the First Amended Complaint through a series of miscellaneous factual allegations that are wholly irrelevant to plaintiffs' claims. For example, plaintiffs allege that in May 2000 the Italian Antitrust Authority concluded that certain conduct by Italian subsidiaries of three of the defendants violated Italian antitrust law. *See* S.A.C. ¶¶ 63-65. This allegation has no relevance whatsoever to plaintiffs' claims of a global price fixing conspiracy or unilateral misconduct in the United States.

It is worth noting, however, that in 2001 an Italian court reversed this decision for lack of factual support and lack of reasoning. *See* Trib. Ammin. Reg. Lazio, sez. I, 21 Feb. 2001, No. 1371/2001 (Ex. D, translation at Ex. E). Plaintiffs' cite to the decision of the Italian Antitrust Authority without disclosing its reversal reflects either an inadequate investigation or an inadequate level of candor.

In addition, in another irrelevant allegation, plaintiffs assert that certain of defendants "conspired" with their wholly owned subsidiaries to determine which company would submit a bid for certain projects. *See* S.A.C. ¶¶ 59-60. Under clear, well-settled law, a company is legally incapable of conspiring with its wholly owned subsidiary. *Copperweld v. Independence Tube*, 467 U.S. 752, 771 (1984) ("A parent and its wholly-owned subsidiary have a complete unity of interest.").

15

Plaintiffs also contend that defendants "are all members of the Elevator Escalator Safety Association and the American Society of Mechanical Engineers, which hosted an elevator emergency workshop in March 2004, attended by representatives of each of the four companies." S.A.C. ¶ 48. First, attendance at an elevator emergency workshop is entirely irrelevant to plaintiffs' antitrust claims. Second, plaintiffs' investigation should have revealed that the purpose of that workshop, which was attended by building contractors, firemen, and U.S. government personnel, was to discuss safety issues raised by the events of September 11, 2001. *See* Workshop on Use of Elevators in Fires and Other Emergencies, March 2-4, 2004, Atlanta, Georgia, *available at* http://www.asme.org/cns/elevators/index.shtml. (Ex. F).

The carelessness reflected in these irrelevant assertions underscores the fundamental problem in the Second Amended Complaint. Following this Court's warning in January not to file another complaint without complying with the pleading standard, the plaintiffs evaluated the merits of their case and the majority of the complaints were abandoned or withdrawn. The remaining plaintiffs, however, have shown themselves willing to stretch desperately to add bulk to their complaints, even if that means including irrelevant and misleading allegations.

Plaintiffs' miscellaneous, irrelevant allegations do not save their otherwise inadequate pleading. The Second Amended Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).

## II.    PLAINTIFFS' FOREIGN CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1)

Plaintiffs' claims related to alleged foreign injury should be dismissed for the additional and independent reason that this Court lacks subject matter jurisdiction over those claims. *See* Fed. R. Civ. P. 12(b)(1).

16

It has long been recognized that the U.S. antitrust laws do not apply to conduct

affecting solely non-U.S. markets. *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 305 (3d

Cir. 2002) (U.S. antitrust laws "do not extend to protect foreign markets from anticompetitive

effects, and 'do not regulate the competitive conditions of other nations' economies.'") (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582 (1986)). In 1982,

Congress codified this limitation in the Foreign Trade Antitrust Improvements Act ("FTAIA"),

which sets out a general rule that the Sherman Act "shall not apply" to conduct involving foreign

trade or commerce. 15 U.S.C. § 6a. The Supreme Court recently affirmed this principle in

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 124 S. Ct. 2359, 2364-2365 (2004).

The FTAIA brings foreign conduct back within the reach of the Sherman Act only

if two requirements are met: (1) the anticompetitive conduct "has a direct, substantial, and

reasonably foreseeable effect" on domestic, import, or (certain) export commerce (§ 6a (1)); *and*

(2) "such effect gives rise to a claim" under the Sherman Act (§ 6a (2)). *Id.*[13] Further, the

Supreme Court has clarified that a plaintiff must establish that its *own claim* arises from the

---

[13] The FTAIA provides in pertinent part:

Sections 1 to 7 of [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
 (1) such conduct has a direct, substantial, and reasonably foreseeable effect—
   (A)   on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
   (B)   on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
 (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
15 U.S.C. § 6a.

"direct, substantial, and reasonably foreseeable effect" of alleged misconduct on U.S. commerce. *Empagran,* 124 S. Ct. at 2372.[14]

In *Empagran*, the plaintiffs alleged that "vitamin sellers around the world ... agreed to fix prices, leading to higher vitamin prices in the United States and independently leading to higher vitamin prices in other countries such as Ecuador." *Id.* at 2363. The Court concluded that "a purchaser in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury, but a purchaser in Ecuador could not bring a Sherman Act claim based on foreign harm." *Id.*

In this case, plaintiffs have likewise failed to satisfy the requirements of the FTAIA with respect to the foreign injury they allege.[15] Plaintiffs allege that they "purchased elevators and/or elevator maintenance and repair services from defendants" and that "as a result of defendants' conspiracy, these plaintiffs have been injured in their business and property...." S.A.C. ¶ 5. Plaintiffs do not state whether these alleged transactions or the presumed harm took place in the United States or Europe. There is at least one named plaintiff that apparently alleges exclusively foreign injury. *See* S.A.C. ¶ 6 ("Plaintiff Transhorn, Ltd. ('Transhorn') is .... the manager/owner of an elevator building in London, England."). Moreover, plaintiffs seek to represent a class that includes claims of all European purchasers of elevators and elevator repair and maintenance services. *See* S.A.C. ¶ 32. Plaintiffs' foreign claims are precisely the type that *Empagran* held must be dismissed.

---

[14] The Court reached this conclusion based on both the language of the FTAIA and the important principle that statutes should be interpreted to "avoid unreasonable interference with the sovereign authority of other nations." *Empagran,* 124 S. Ct. at 2366.

[15] It is plaintiffs' burden to plead a valid basis for this Court to assert subject matter jurisdiction over their claims. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Furthermore, plaintiffs cannot rely upon inferences to meet this burden. *See Shipping Fin. Servs Corp v Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

18

Plaintiffs make some cursory and non-specific allegations of an interrelationship between U.S. and foreign markets. *See, e.g.*, S.A.C. ¶¶ 61, 70. These allegations, which could be made regarding any industry, fall far short of establishing that any alleged anticompetitive conduct in foreign commerce "has a direct, substantial, and reasonably foreseeable effect" on domestic commerce and that that domestic effect "gives rise" to plaintiffs' foreign claims. In fact, the D.C. Circuit recently held that allegations of "interdependence" between U.S. and foreign markets much more clear-cut than those raised in the present case were insufficient to establish subject matter jurisdiction:

> Although the appellants argue that the vitamin market is a single, global market ... [and] that their injuries arose from the higher prices charged by the global conspiracy ... they still must satisfy the FTAIA's requirement that the U.S. effects of the conduct give rise to their claims. The but-for causation the appellants proffer [in their "global markets" argument] establishes only an indirect connection between the U.S. prices and the prices they paid when they purchased vitamins abroad ...

*Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005). *See also Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004) (dismissing claim for lack of subject matter jurisdiction notwithstanding plaintiff's argument that its foreign injury was "linked" to U.S. injury because the product at issue was fungible across markets); *Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 427 (5th Cir. 2001).

Similarly, just a few weeks ago, Magistrate Judge Freeman of this District dismissed a putative class action brought on behalf of foreign purchasers of chemicals who alleged that they had been injured by a global price fixing conspiracy. *See Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10312 (HB)(DF), 2005 U.S. Dist. LEXIS 19788, at *40 (S.D.N.Y. Sept. 19, 2005) (holding that alleged interrelationship between U.S. and foreign markets was "simply too indirect to support this Court's subject matter jurisdiction"). To

19

the extent that plaintiffs seek recovery for alleged injuries in foreign markets, these claims should be dismissed for lack of subject matter jurisdiction.

Principles of antitrust standing provide a related reason to dismiss plaintiffs' claims. *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534-35 (1983). Although many courts have dismissed foreign claims like those plaintiffs seek to pursue here for lack of subject matter jurisdiction, some courts have chosen to dismiss such claims for lack of standing. *See, e.g.*, *Turicentro*, 303 F.3d at 307 (plaintiffs' foreign injuries "are not of the type Congress intended to prevent through the [FTAIA] or the Sherman Act."); *de Atucha v. Commodity Exch., Inc.*, 608 F. Supp. 510, 514-18 (S.D.N.Y. 1985) (dismissing for lack of standing antitrust class action filed by Argentine plaintiff who allegedly suffered injury as a result of a conspiracy affecting prices of silver on the London Mercantile Exchange); *see also Den Norske*, 241 F.3d at 431 n.32 (affirming dismissal on alternative grounds of standing because plaintiff's alleged injury was "not of the type that the antitrust statute was intended to forestall.").

Plaintiffs here have likewise failed to establish that they have standing to pursue claims related to foreign injury. The claims of plaintiff Transhorn and any other claims of foreign injury should be dismissed.

20

## CONCLUSION

For the reasons stated above, the Second Amended Complaint can and should be dismissed pursuant to Rule 12(b)(6).  Further, the Court should not grant plaintiffs another opportunity to amend.  In light of the lengthy history of this case, the prior direction of the Court to comply with the pleading standard, and the prior grant of leave to amend, dismissal without leave to amend is now appropriate.  *See, e.g., Smado*, 378 F.3d at 213 (denying leave to re-amend complaint to allege new facts); *Heart Disease Research Found.*, 463 F.2d at 101 (holding that "the amended complaint … was so insufficiently and frivolously drawn" that dismissal without leave to amend was appropriate); *Yellow Page Solutions, Inc.*,  2001 U.S. Dist. LEXIS 18831, at *44 (plaintiffs were "on notice of the deficiencies in their original complaint.  Plaintiffs have failed to correct these deficiencies in their amended complaint, and thus dismissal without leave to replead is proper.") (internal citations omitted).

The Court should also dismiss the claims by the foreign plaintiffs because it lacks subject matter jurisdiction over these claims.

Dated: October 21, 2005

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: /s/ Mark Leddy
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 974-1500

*Attorneys for Defendants*
*United Technologies Corporation and*
*Otis Elevator Company*

21

SHEARMAN & STERLING LLP

By: _____

Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*


WEIL GOTSHAL & MANGES LLP

By: _____

A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*


THELEN REID & PRIEST LLP

By: _____

Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*


GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____

Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*


WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

THELEN REID & PRIEST LLP

By: _____
Michael Evan Jaffe (MJ-8036)
*Admitted pro hac vice*
Gerald Zingone
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*


GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone:  (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

22

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*


THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*


WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*


GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

22

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*


WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*


GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3093)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone:  (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

22