# EXHIBIT C

Dockets.Justia.com

```
                                                                        1
      51dftrac               CONFERENCE
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    TRANSHORN, LTD.,
 3
 4              Plaintiff,
 4
 5         v.                              04 CIV 1178
 5
 6    UNITED TECHNOLOGIES
 6    CORPORATION, et al.,,
 7
 7              Defendants.
 8
 8    ------------------------------x
 9
 9                                         January 13, 2005
10                                         3:40 p.m.
10
11    Before:
11
12                   HON. THOMAS P. GRIESA,
12
13                                         District Judge
13
14                       APPEARANCES
14
15    WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
15         Attorneys for Plaintiffs
16    BY:  FRED T. ISQUITH and ALEXANDER H. SCHMIDT
16
17    LERACH COUGHLIN STOIA & ROBBINS LLP
17         Attorneys for Plaintiffs
18    BY: MARK SOLOMON
18
19    STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH, LLP
19         Attorneys for Plaintiffs
20    BY:  ALLAN STEYER
20
21    LOCKRIDGE GRINDAL NAUEN PLLP
21         Attorneys  for Plaintiffs
22    BY:  W. JOSEPH BRUCKNER
22
23    LAW OFFICES OF BERNARD M. GROSS, PC
23         Attorneys for Plaintiffs
24    BY:  WARREN RUBIN
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                         2
           51dftrac                 CONFERENCE
     1     APPEARANCES (Continued)
     2     KOHN SWIFT & GRAF PC
     2          Attorneys  for Plaintiffs
     3     BY:  JOSEPH C. KOHN
     3
     4     BRANSTETTER, KILGORE, STRANCH & JENNINGS
     4          Attorneys for Plaintiff
     5     BY:  J. GERARD STRANCH, IV
     5
     6     CLEARY, GOTTLIEB, STEEN & HAMILTON
     6          Attorneys for Defendant Otis Elevator and United
     7     Technologies
     7     BY: MARK LEDDY
     8
     8
     9     SHEARMAN & STERLING, LLP
     9          Attorneys for Defendants Schindler
    10     BY:  KENNETH M. KRAMER
    10
    11     THELEN REID & PRIEST LLP
    11           Attorneys  for Defendants Kone, Inc. and Kone Corp.
    12     BY:   MICHAEL EVAN JAFFE and GERALD ZINGONE
    12
    13     WEIL, GOTSHAL & MANGES LLP
    13          Attorneys for Defendants THYSSEN
    14     BY:  CHRISTOPHER V. ROBERTS and SCOTT MARTIN
    14
    15     GIBBONS, DEL DEO, DOLAN, GRIFFINER & VECCHIONE
    15          Attorneys  for Defendants THYSSENKRUPP AG
    16     BY:  TERRY MYERS and THOMAS R. VALEN
    16
    17
    18
    19
    20
    21
    22
    23
    24
    25
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

```
                                                                    3
        51dftrac                 CONFERENCE
 1              THE COURT:  To what do I owe the pleasure of your
 2      company?  There is a lot of company here.
 3              MR. ISQUITH:  Your Honor, would you --
 4              THE COURT:  Who wants to speak?
 5              MR. ISQUITH:  Fred Isquith from the Wolf Haldenstein
 6      firm representing plaintiffs.
 7              THE COURT:  From where?
 8              MR. ISQUITH:  Wolf Haldenstein in New York City.  You
 9      appointed our firm, along with the Lerach Coughlin Stoia &
10      Robbins firm from San Diego as co-lead counsel.  This is my
11      partner, Alex Schmidt.
12              We are here in part because your Honor has asked us to
13      be here, but in part because after 11 months we thought that
14      it's time to get the case started and organized and moving.
15              THE COURT:  Okay.
16              MR. ISQUITH:  It has been sent to your Honor, although
17      the first cases started here, our case started here.  There
18      were cases filed in various districts around the country, and
19      the judicial panel on multi district litigation transferred all
20      those cases to your Honor and consolidated them for pretrial
21      purposes only a few weeks ago.
22              In the meantime, and prior to that an amended
23      complaint was filed in this district under.  Your Honor's
24      orders, the other complaints are incorporated and brought
25      within.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                    4
       51dftrac              CONFERENCE
 1             THE COURT:  What's the case about?
 2             MR. ISQUITH:  Thank you, your Honor.
 3             This is a case, an antitrust case.  It deals with a
 4   price fixing conspiracy within the elevator industry, elevators
 5   and moving stairways and things like that, escalators and the
 6   rest.  The defendants are the four or five major suppliers of
 7   elevators, their parts and services.
 8             THE COURT:  Are they domestic companies?
 9             MR. ISQUITH:  Some are and some are not.
10             THE COURT:  Who are the companies?
11             MR. ISQUITH:  I'm going to forget this.
12             MR. SOLOMON:  Your Honor, Otis Elevators, which is a
13   subsidiary of United Technologies, Tycon Group, Kone and
14   Schindler and various related European affiliates.
15             THE COURT:  There is a Japanese company, is that in
16   it?
17             MR. LEDDY:  Your Honor, there are several Japanese
18   companies who make elevators.  One is Fuji Tech, is not a
19   defendant in this case.
20             THE COURT:  The defendants are American and European
21   companies?
22             MR. SOLOMON:  That's correct, your Honor.
23             THE COURT:  All right.  Thank you.
24             So, what did they do?
25             MR. ISQUITH:  Well, essentially, your Honor, what we
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                    5
        51dftrac              CONFERENCE
 1   charge and what investigations by government authorities have
 2   tended to show, at least at the moment, is that they agreed to
 3   set prices among themselves.
 4            THE COURT:  Did the Government bring any proceedings?
 5            MR. ISQUITH:  The United States government has not
 6   brought a proceeding at this moment, although we do -- I don't
 7   know if there is an investigation or not.  I shouldn't say more
 8   than that.
 9            THE COURT:  All right.  Well, there is price fixing
10   and price fixing, so what do you say went on?
11            MR. ISQUITH:  What the complaint charges, there is --
12   I don't know if there is price fixing and there is price
13   fixing, but there is certainly -- when there are agreements
14   among competitors to set prices or markets, we believe that is
15   a violation.
16            THE COURT:  What form did the agreements take?
17            MR. ISQUITH:  In what sense, your Honor?
18            THE COURT:  I mean, did they get together at trade
19   fairs or did that -- what did they do?  Or was it conscious
20   parallelism or whatever that is.
21            MR. ISQUITH:  No.  We charge that there were actual
22   agreements transmitted word for word, whether that was
23   orally -- well, we don't expect that we are going to find a
24   smoking gun document signed and sealed by everybody if that's
25   what you mean.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                        6
        51dftrac              CONFERENCE
 1              THE COURT:  Well, what do you have?
 2              MR. ISQUITH:  What we have is a charge in the European
 3   Antitrust Commission of particular price fixing and bid
 4   rigging.
 5              THE COURT:  No.  Look, can you be more specific?  An
 6   antitrust case has got to have some specifics, doesn't it?  So
 7   what are your specifics?
 8              You say the president of one company met with the
 9   other company and divided up the market or --
10              MR. ISQUITH:  No, I wouldn't want to go that far, your
11   Honor.  I don't know those kinds of specifics, if you are
12   asking me when, where and when those conferences took place.
13              THE COURT:  What's the basis for your complaint?
14              MR. ISQUITH:  The basis of our complaint, that is why
15   we brought it, what is our good faith basis for the complaint?
16              THE COURT:  Right.
17              MR. ISQUITH:  Is an investigation and report in Europe
18   by the European Commission.
19              THE COURT:  That doesn't mean much.  What do you say
20   happened?
21              MR. ISQUITH:  Your Honor, what we --
22              THE COURT:  Maybe you have read the investigation.  Is
23   there an investigation to read?
24              MR. SOLOMON:  Your Honor, if I may interrupt.
25              MR. ISQUITH:  Please.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                   7
          51dftrac              CONFERENCE
 1             MR. SOLOMON:  Be of assistance, hopefully.
 2             In Europe, there is not a public document that details
 3   the investigation.  What we know is that the investigation is
 4   ongoing.  What we know is that two of the defendants have
 5   admitted to antitrust violations in certain locations.  What we
 6   know is --
 7             THE COURT:  And where did that do that admitting?
 8             MR. SOLOMON:  The admissions have come with respect to
 9   Belgium and Germany.  We don't expect the conspiracy was
10   limited to Belgium and Germany.
11             THE COURT:  What was admitted?
12             MR. SOLOMON:  Otis and Kone --
13             THE COURT:  I guess I don't have those names.
14             MR. SOLOMON:  Otis, which is a subsidiary of United
15   Technologies and Kone.
16             THE COURT:  How do you spell it?
17             MR. SOLOMON:  K-o-n-e.
18             THE COURT:  Is that a foreign company?
19             MR. SOLOMON:  That's correct, your Honor.
20             THE COURT:  Okay.  Where is Kone located?
21             MR. SOLOMON:  Kone is located both here with its U.S.
22   subsidiary and also, I believe, it's Finnish.
23             MR. LEDDY:  It's a Finnish company, your Honor.  Your
24   Honor, may I just intervene for one moment.
25             THE COURT:  Yes.  Are you --
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                    8
     51dftrac                CONFERENCE
 1            MR. LEDDY:  I'm Mr. Leddy, your Honor, from Cleary
 2   Gottlieb.
 3            I represent Otis and UTC.  Your Honor, there are no
 4   charges yet in Europe.  There is an investigation in Europe.
 5   Several of the companies have publicly stated, pursuant to
 6   their SEC requirements, that there may be violations on a local
 7   level in several countries in Europe.  The investigation is
 8   ongoing, your Honor, and has nothing to do with the United
 9   States.
10            Thank you, your Honor.
11            MR. SOLOMON:  And, your Honor, these companies
12   operate, obviously both in Europe and through affiliated
13   entities in the U.S.A.  Our collective clients are purchasers
14   either of elevators or of services who believe that when the
15   bids have been arranged with respect to certain of the lists
16   that were sold, certain service contracts that were sold that
17   the bids were rigged.  That as a result there is unexplained
18   parallelism.  If not, there are circumstances in which the
19   higher bid inexplicably will get to contract as opposed to the
20   lowest bid.
21            It appears from both our collective clients
22   experience, the European experience, and I would suggest at
23   least at this stage common sense in this industry, that the
24   practices are widespread.  Otis doesn't come very easily to an
25   admission of antitrust violations.  It has done so, because I
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                    9
        51dftrac              CONFERENCE
 1   assume the violations in those locations are crystal clear.  I
 2   think it's common sense that if there are violations in those
 3   areas that Otis has admitted or United Technologies has
 4   admitted in its 10Q, that if there is an adverse commission
 5   finding it will likely materially affect its financial results.
 6            THE COURT:  If there is.
 7            MR. SOLOMON:  If there is.
 8            THE COURT:  Is it an if?
 9            MR. SOLOMON:  Yes, the investigation continues.
10   Notwithstanding that, in the middle of the investigations
11   admission have been made.
12            THE COURT:  Who are the plaintiffs?
13            MR. SOLOMON:  In the European community, your Honor,
14   there is, as far as I know, no private litigation.  That is a
15   government investigation.
16            THE COURT:  Wait a minute.  Who are the plaintiffs,
17   building owners or what?
18            MR. SOLOMON:  Here they are both building owners.  In
19   respect to Mr. Isquith's clients they are the owners of some
20   50,000 residential units in high rises in the New York City
21   area.  There are representative plaintiffs from all over the
22   country, some of whom are represented by counsel here to my
23   right.  Typically, they tend to be either developers or
24   building owners.
25            THE COURT:  So, where does the litigation stand now?
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                    10
    51dftrac              CONFERENCE
 1            MR. SOLOMON:  It presently stands that we need to make
 2   sure that all of the cases that were filed in Philadelphia and
 3   elsewhere are consolidated into these proceedings.  We would
 4   propose that we should file a consolidated complaint.  We would
 5   also propose that a schedule be put in place for Rule 26(f),
 6   Rule 26 meeting, I should say, so that discovery can begin.
 7            THE COURT:  There hasn't, discovery has not begun.
 8            MR. SOLOMON:  There has been no Rule 26 meeting
 9   because the defendants took the view, perhaps not unreasonably,
10   that they wanted the MDL proceeding to be finalized before we
11   went to that stage.
12            THE COURT:  Well, now, who is going to -- when
13   discovery gets started, who is going to participate in the
14   discovery?  Everybody here will be sitting around a deposition
15   room or what?
16            MR. SOLOMON:  Well, I -- first of all, your Honor, you
17   have signed off on the leadership structure in this case, and
18   we have agreements with the other counsel, many of whom are to
19   my right, to participate in that leadership structure and help
20   us with the case.  We are not looking to for double effort.  We
21   are looking for streamlining and efficiency.
22            I certainly will be a principal player in the
23   litigation as will Mr. Isquith.  Some of the counsel on my
24   right will certainly be involved.  I imagine the defense
25   counsel, all of whom are behind me, will be significantly
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                                    11
          51dftrac                CONFERENCE
 1   involved.
 2             THE COURT:  What discovery is going to take place?
 3   What are you going to do?
 4             MR. SOLOMON:  It's going to be a function to some
 5   extent of what assaults the defendants put in place on the
 6   complaint.  I would believe there will be some jurisdictional
 7   disputes.  To that the extent, there may well be jurisdictional
 8   discovery we will be seeking.  Most importantly we'll be
 9   looking for the substantive discovery, discovery of the
10   arrangements whereby the defendants behind me bid on contracts,
11   the arrangements.
12             THE COURT:  So how are you going to get that
13   discovery?  What will it take.  What form will it take?
14             MR. SOLOMON:  Well, we have sent the defendants, prior
15   to the MDL just for their consideration, drafts of our document
16   requests that after a 26(f) conference or 26 conference, after
17   initial disclosures we would be seeking from the company.  They
18   have in their possession drafts of those discovery requests.
19             If we are able to get sufficient discovery, we will
20   then move either at the same time or shortly there afterwards
21   for depositions, your Honor.
22             MR. LEDDY:  Your Honor, may I address the issue of the
23   discovery schedule?
24             THE COURT:  Sure.
25             MR. LEDDY:  Your Honor, we have been trying to find
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                12
         51dftrac              CONFERENCE
 1   out what this case is all about for sometime now as well.
 2            Just a few minutes on background, your Honor.
 3            The European Commission announced in late January of
 4   last year, January 29th, via a press release that they were
 5   conducting an investigation of the elevator escalator industry
 6   in certain countries in UPS.  Ten business days later, your
 7   Honor, in this court a London building owner filed an
 8   allegation.
 9            THE COURT:  What happened ten days later?
10            MR. LEDDY:  The first complaint in this case was
11   filed, your Honor, by a London building owner by the name of
12   Transitorn.  I believe it's Mr. Isquith's client -- I'm sorry,
13   Mr. Solomon's client.  Ten days after the press release, your
14   Honor, this complaint is filed and it alleges on behalf of all
15   customers worldwide an allegation of price fixing in this
16   industry, in effect an internationally worldwide cartel.
17            There is not one specific allegation to support that
18   charge about this industry in that complaint.  It simply says,
19   in completely conclusory fashion, they met, they talked, they
20   agreed on price; that's all that's in that complaint, but for a
21   reference to the press release.
22            Over the next number of months, 25 more class actions
23   are filed, your Honor, almost identical.  Some contain the same
24   typos of predecessor complaints and now we are before the Court
25   and we would like, your Honor, to ask that no discovery take
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                  13
        51dftrac              CONFERENCE
 1   place in this case until we file dispositive motions.  We think
 2   there is a serious question, your Honor, under Rule 12(b)(6),
 3   and we'll be filing a 12(b)(6) motion.
 4            THE COURT:  Look, look, look.  If the complaint is as
 5   barren as you say, we don't need motions.
 6            Can I see a copy of the complaint, see what you are
 7   talking about?
 8            MR. LEDDY:  Yes, your Honor.  The amended, the
 9   consolidated.
10            THE COURT:  Can you help me out?  Where are the
11   allegations of wrongdoing?
12            MR. LEDDY:  The allegations of wrongdoing, your Honor,
13   are contained in a number of paragraphs.  Page ten, your Honor.
14   Paragraph 28, your Honor.
15            THE COURT:  All right.  Except for a few things in
16   paragraphs 30 to 33, it looks like a form book.
17            MR. LEDDY:  That is to be our view as well, your
18   Honor.
19            THE COURT:  It looks like a form book.  And you don't
20   sue a lot of people and cause companies to spend a lot of money
21   defending cases when there is no more than this.
22            And there is no reason for any motion.  The complaint
23   is unacceptable, will have to be revised to be more specific
24   and until it is, there will be no more meetings, there will be
25   no more need for anybody to incur legal expenses.  And it may
                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                              14
        51dftrac              CONFERENCE
 1  be that the legal expenses incurred thus far by the defendants
 2  will be imposed upon the plaintiffs and their counsel.
 3           There should have been no such complaint filed.
 4           That's the end of this meeting.  And there will be no
 5  more of this kind of pleading and, if there is, there will
 6  definitely be sanctions.
 7           Thank you.
 8                             oOo
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```