UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
               :

IN RE ELEVATOR AND ESCALATOR   :    MDL No. 1644
ANTITRUST LITIGATION          :

               :
               :
               :
------------------------------------------------------- x
               :

IN RE ELEVATOR ANTITRUST     :    Master Docket No. 1:04 CV 01178 (TPG)
LITIGATION              :    (ECF CASE)

               :
               :
               :
------------------------------------------------------- x
               :

This Document Relates To:       :    **ORAL ARGUMENT REQUESTED**
               :

All Actions              :
------------------------------------------------------- x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT**

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................... 1

I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) ............. 1

    A.   Plaintiffs Repeat the Inadequate § 1 Claims
        from the First Amended Complaint........................................................ 2

    B.   Plaintiffs' Conspiracy to Monopolize Claims
        Add No Substance to the Complaint ....................................................... 4

    C.   Plaintiffs' Unilateral Monopolization Claims
        Are Likewise Insufficient ...................................................................... 6

II.   THE FOREIGN CLAIMS SHOULD BE DISMISSED UNDER
    RULE 12(b)(1)................................................................................................. 8

CONCLUSION....................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*A.I.B. Express, Inc. v. FedEx Corp.*,
   358 F. Supp. 2d 239 (S.D.N.Y. 2004) ........................................................ 7

*Arbitron Co. v. Tropicana Prod. Sales, Inc.*,
   No. 91 Civ. 3697 (PKL), 1993 U.S. Dist. LEXIS 5587
   (S.D.N.Y. Apr. 28, 1993) ........................................................... 5

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985) ........................................................... 7

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
   369 F.3d 212 (2d Cir. 2004) ........................................................... 8

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
   485 U.S. 717 (1988) ........................................................... 6

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
   433 U.S. 36 (1977) ........................................................... 6

*Covad Communications Co. v. BellSouth Corp.*,
   374 F.3d 1044 (11th Cir. 2004) ........................................................... 7

*Credit Chequers Info. Servs., Inc. v. Credit Bureau Ass'n, Inc.*,
   No. 98 Civ. 3868 (RPP), 1999 U.S. Dist. LEXIS 6084
   (S.D.N.Y. Apr. 29, 1999), *aff'd*, 205 F.3d 1322 (2d Cir. 2000) .............................. 4, 5

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) ........................................................... 7

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
   417 F.3d 1267 (D.C. Cir. 2005),
   *cert. denied*, --- U.S. ---, No. 05-541, 2006 U.S. LEXIS 68 (Jan. 9, 2006) .............. 9, 10

*Ezekwo v. Am. Bd. of Internal Med.*,
   18 F. Supp. 2d 271 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 844 (2d Cir. 1999) ............... 3

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) ........................................................... 9, 10

*FLM Collision Parts, Inc. v. Ford Motor Co.*,
   543 F.2d 1019 (2d Cir. 1976) ........................................................... 5

**Page(s)**

*Heart Disease Research Found. v. Gen. Motors Corp.*,
    463 F.2d 98 (2d Cir. 1972) ....................................................................... 1

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
    879 F.2d 1005 (2d Cir. 1989)................................................................... 5

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*,
    253 F. Supp. 2d 262 (D. Conn. 2003) ...................................................... 4

*In re Monosodium Glutamate Antitrust Litig.*,
    No. Civ. 00 MDL 1328 (PAM), 2005 WL 2810682
    (D. Minn. Oct. 26, 2005) ..................................................................... 9, 10

*In re Publ'n Paper Antitrust Litig.*,
    No. 3:04 MD 1631 (SRU), 2005 U.S. Dist. LEXIS 19896
    (D. Conn. Sept. 6, 2005) ...................................................................... 4, 10

*Industria Siciliana Asfalti, Bitumi, S.p.A. v. Exxon Research & Eng'g Co.*,
    No. 75 Civ. 5828-CSH, 1977 U.S. Dist. LEXIS 17851
     (S.D.N.Y. Jan. 18, 1977) ........................................................................ 10

*Klebanow v. N.Y. Produce Exch.*,
    344 F.2d 294 (2d Cir. 1965) ...................................................................... 5

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
    No. 03 Civ. 10312 (HB) (DF), 2005 U.S. Dist. LEXIS 19788
    (S.D.N.Y. Sept. 19, 2005) ..................................................................... 9, 10

*Levitch v. Columbia Broad. Sys., Inc.*,
    495 F. Supp. 649 (S.D.N.Y. 1980), *aff'd*, 697 F.2d 495 (2d Cir. 1983) .................. 5

*MM Global Servs., Inc. v. Dow Chem. Co.*,
    329 F. Supp. 2d 337 (D. Conn. 2004) ...................................................... 10

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) .................................................................................. 6

*N.Y. Jets LLC v. Cablevision Sys. Corp.*,
    No. 05 Civ. 2875 (HB), 2005 U.S. Dist. LEXIS 23763
    (S.D.N.Y. Oct. 18, 2005) ........................................................................... 7

**Page(s)**

*SCM Corp. v. Xerox Corp.*,
   645 F.2d 1195 (2d Cir. 1981) ..................................................... 8

*Stephens v. CMG Health*,
   No. 96 Civ. 7798 (NRB)(KMW), 1997 U.S. Dist. LEXIS 23797
   (S.D.N.Y. July 22, 1997), *adopted*, 1998 U.S. Dist. LEXIS 22929
   (S.D.N.Y. May 12, 1998), *aff'd*, 165 F.3d 14 (2d Cir. 1998) .................. 3

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961) ................................................................. 8

*Technical Res. Servs., Inc. v. Dornier Med. Sys., Inc.*,
   134 F.3d 1458 (11th Cir. 1998) ................................................. 6

*Turicentro, S.A. v. Am. Airlines Inc.*,
   303 F.3d 293 (3d Cir. 2002) .................................................... 10

*Twombly v. Bell Atl. Corp.*,
   425 F.3d 99 (2d Cir. 2005) ..................................................... 3, 4

*United States v. Aluminum Co. of Am.*,
   148 F.2d 416 (2d Cir. 1945) .................................................... 8

*Verizon Communications, Inc. v. Law Offices of Curtis v. Trinko, LLP*,
   540 U.S. 398 (2004) ............................................................. 6, 7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) .............................................................. 8

*Williamson Oil Co. v. Philip Morris USA*,
   346 F.3d 1287 (11th Cir. 2003) ................................................. 3

*Yellow Page Solutions v. Bell Atl. Yellow Pages Co.*,
   No. 00 Civ. 5663 (MBM), 2001 U.S. Dist. LEXIS 18831
   (S.D.N.Y. Nov. 19, 2001) ......................................................... 3

## U.S. CONSTITUTION, FEDERAL RULES AND STATUTES

**Page(s)**

U.S. Const. art. I, § 8, cl. 8 ............................................................................. 8

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 8, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 10

15 U.S.C. § 1 ............................................................................................... 1, 2, 4, 5

15 U.S.C. § 2 ............................................................................................... 1, 5, 6, 8

15 U.S.C. § 6a ............................................................................................. 9

Defendants respectfully submit this Memorandum of Law in further support of their motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to dismiss the plaintiffs' foreign claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

## INTRODUCTION

The first complaint in this case was filed in February 2004 within ten days of a press release regarding alleged price fixing by certain affiliates of the defendants in Europe. In the ensuing months, twenty-five nearly identical piggyback complaints (some with the same typographical errors) were filed in courts around the country. Just over one year ago, this Court found that plaintiffs' First Amended Complaint failed to satisfy the pleading standard. More than half of the original complaints were subsequently withdrawn or abandoned.

The Second Amended Complaint adds no support to plaintiffs' original bare bones claims of a global price fixing conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs' brief again makes clear that the sole origin and centerpiece of their case remains press reports of alleged misconduct in four countries in Europe that has nothing to with the United States. In the nearly two years since plaintiffs first filed this case, they have not identified a single specific fact in support of their global price fixing conspiracy. Not one. Now, in an attempt to distract attention from this fatal flaw, the Second Amended Complaint adds wholly inadequate claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. For the following reasons, the complaint should be dismissed with prejudice.

## I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)

Plaintiffs concede that a complaint must do more than plead the statutory words in asserting an antitrust violation. *See* Plaintiffs' Brief ("Pl. Br.") at 14; *see also Heart Disease*

1

*Research Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972).  Yet, setting aside their

irrelevant assertions, that is all plaintiffs have done in the Second Amended Complaint.

**A.     Plaintiffs Repeat the Inadequate § 1 Claims from the First Amended Complaint**

The Second Amended Complaint, like the complaints that preceded it, is based on

alleged anticompetitive conduct in four countries in Europe.  *Compare* S.A.C. ¶¶ 66-69 *with*

F.A.C. ¶¶ 30-32.[1]  Plaintiffs go so far as to assert that two press releases regarding the European

investigation somehow constitute "direct evidence" of a global conspiracy.  Pl. Br. at 3.  But the

releases refer only to localized conduct.[2]  Plaintiffs also raise allegations related to an earlier

Italian administrative decision, but do not reveal that it was overturned by an Italian court for

lack of grounds and lack of reasoning.[3]  In short, these allegations do not add up to even a pan-

European conspiracy, much less a global conspiracy affecting the United States.

Plaintiffs boldly assert that they conducted a "lengthy investigation which

confirmed that the same wrongdoing being investigated by the EU was, in fact, occurring in the

United States."  Pl. Br. at 2.  This completely unsupported assertion is striking, and justifies

reviewing for a moment some of the things that the complaint does not do:

- The complaint does not identify a single U.S. bid or price announcement that was

  allegedly "fixed" by defendants.

---

[1] This citation refers to the second set of paragraphs numbered 30-32 in the First Amended Complaint.

[2] Plaintiffs do not quote the relevant parts of these releases.  The UTC press release states that Otis employees in a small number of locations in Europe "may have engaged in activities at a *local level* in violation of Otis and UTC policies and applicable competition law," and the Kone release states that "KONE has identified *certain local anticompetitive practices in Belgium, Luxemburg and Germany*, but has not found evidence or indications of any European-wide anti-competitive practices." *See* Exhibits A and B (emphases added).  Exhibits are attached to the Declaration of Leah Brannon, dated February 3, 2006.

[3] Plaintiffs say they "were unaware of (and were unable to access) information" indicating that the decision they cited was reversed.  Pl. Br. at 4 n.8.  To the contrary, any investigation that identified the decision would also have identified the publicly available fact of its reversal.

- The complaint does not identify a pattern of price increases that might appear suspicious.

- The complaint does not allege that defendants refuse to provide service on elevators manufactured by other defendants. Rather, it alleges that defendants go to the "costly and time-consuming" effort of reverse engineering one another's technology so that they <u>can</u> compete to provide service on elevators made by other defendants. S.A.C. ¶ 54.

- The complaint does not, like the one in *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 118 (2d Cir. 2005), identify <u>any</u> suspicious or abnormal parallel conduct by defendants affecting U.S. customers.[4]

In short, instead of concrete allegations, plaintiffs rely on broad but empty assertions. For example, plaintiffs assert that defendants belong to trade associations, and that the industry is an "oligopoly." S.A.C. ¶¶ 47-48; Pl. Br. at 11-12. These allegations are plainly insufficient. *See, e.g.*, *Yellow Page Solutions v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 U.S. Dist. LEXIS 18831, at *41 (S.D.N.Y. Nov. 19, 2001) ("[A] conspiracy will not be inferred from participation in a trade association."); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1306 (11th Cir. 2003) (allegations of oligopoly insufficient).

Plaintiffs also repeatedly assert a circular legal conclusion: They say that defendants fixed prices by rigging bids and fixing prices. *See, e.g.*, S.A.C. ¶ 41; Pl. Br. at 5. Again, it is well established that conclusory assertions like these are insufficient. *See, e.g.*, *Ezekwo v. Am. Bd. of Internal Med.*, 18 F. Supp. 2d 271, 277 (S.D.N.Y. 1998) ("Conclusory allegations of antitrust violations are simply not enough."), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Stephens v. CMG Health*, No. 96 Civ. 7798 (NRB) (KMW), 1997 U.S. Dist. LEXIS 23797, at

---

[4] Plaintiffs allege that defendants use "similar" contract terms, S.A.C. ¶ 49, but do not identify what those terms might be, much less explain why the terms are suggestive of collusion. *See* Defendants' Brief ("Def. Br.") at 5-6.

*16 (S.D.N.Y. July 22, 1997) ("The only specifics provided are that defendants 'joined together to agree on a common course of action seeking to perpetuate and maintain the system that had been created,' that defendants 'met together on numerous occasions' … and that defendants insured the reaching of and adherence to 'agreements' through membership in and activities related to professional associations."), *aff'd*, 165 F.3d 14 (2d Cir. 1998); *Credit Chequers Info. Servs., Inc. v. Credit Bureau Ass'n, Inc.*, No. 98 Civ. 3868 (RPP), 1999 U.S. Dist. LEXIS 6084, at *22 (S.D.N.Y. Apr. 29, 1999) (dismissing conspiracy claims as conclusory and insufficient), *aff'd*, 205 F.3d 1322 (2d Cir. 2000).[5]  The Second Circuit's decision in *Twombly* does nothing to change this well-established rule.  425 F.3d at 109 (reiterating that "'a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal.'") (citations omitted).

Plaintiffs' conclusory § 1 claims are insufficient and Count I of the complaint should be dismissed.

**B.     Plaintiffs' Conspiracy to Monopolize Claims Add No Substance to the Complaint**

Plaintiffs allege in Count II that defendants conspired to monopolize the "markets" for service of their own elevators.[6]  In support of their claim in Count II, plaintiffs

---

[5] Plaintiffs' brief does not attempt to address these cases.  Plaintiffs cite *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262 (D. Conn. 2003).  The plaintiffs in that case identified an 83% price increase in a ten-month period that was not explained by any market conditions and introduced other evidence, including statements by a defendant's employee supporting the conspiracy alleged.  *Id.* at 269-70.  The court held that, "[v]iewing plaintiff's complaint as a whole, … there are sufficient allegations to withstand a motion to dismiss."  *Id.* at 278.  Plaintiffs also cite *In re Publication Paper Antitrust Litigation*, No. 3:04 MD 1631 (SRU), 2005 U.S. Dist. LEXIS 19896 (D. Conn. Sept. 6, 2005).  That case involved allegations that, among other things, the U.S. Department of Justice was investigating price fixing in the U.S., that one defendant had filed an amnesty application, and that prices had risen significantly and uniformly in a way that could not be ascribed to market forces.  Complaint, *In re Publ'n Paper Antitrust Litig.*, (D. Conn. filed Feb. 15, 2005)  ¶¶ 59-60, 81.

[6] Defendants of course reserve the right to challenge plaintiffs' far-fetched market definitions should any portion of the complaint survive this motion to dismiss.  *See* Def. Br. at 5 n.5.

restate their inadequate allegations from Count I (*compare* S.A.C. ¶ 78 *with* S.A.C. ¶ 85).  It is well established, however, that a plaintiff cannot simply re-label faulty § 1 claims as a "conspiracy to monopolize" under § 2.  *See, e.g.*, *FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1030 (2d Cir. 1976) ("FLM's alternate theory of its §2 claim … amounts to nothing more than its §1 claim under another name, and its proof on the point is no more impressive when viewed under the rubric of §2."); *H.L. Hayden Co. of N.Y., Inc.  v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1019 (2d Cir. 1989) (rejecting § 2 conspiracy claims based on same facts as § 1 conspiracy claim); *Credit Chequers*, 1999 U.S. Dist. LEXIS 6084, at *40.

The only other basis for of plaintiffs' "conspiracy to monopolize" claim is their tacked-on assertion that defendants "agreed" to take the actions challenged as unilateral conduct in Counts III-X.  *See, e.g.*, S.A.C. ¶ 50 (alleging that defendants allocated markets by "agreeing to and designing their elevators to require proprietary diagnostic and service tools"); Pl. Br. at 13.  As courts have repeatedly held, adding the conclusory assertion that defendants "agreed" to engage in conduct challenged as unilateral monopolization is insufficient to state a "conspiracy to monopolize" claim.  *See, e.g.*, *Klebanow v. N.Y. Produce Exch*., 344 F.2d 294, 299 (2d Cir. 1965); *Levitch v. Columbia Broad. Sys., Inc.*, 495 F. Supp. 649, 673 (S.D.N.Y. 1980) ("[W]hen stripped of the bald charge of conspiracy, [the] charge amounts to nothing more than a reassertion of plaintiffs' [unilateral] monopolization claims."), *aff'd*, 697 F.2d 495 (2d Cir. 1983); *Arbitron Co. v. Tropicana Prod. Sales, Inc.*, No. 91 Civ. 3697 (PKL), 1993 U.S. Dist. LEXIS 5587, at *32 (S.D.N.Y. Apr. 28, 1993).

Plaintiffs' "conspiracy to monopolize" claims are simply a rehashing of their other claims and should be dismissed.

5

**C.**          **Plaintiffs' Unilateral Monopolization Claims Are Likewise Insufficient**

The Second Amended Complaint adds multiple claims of unilateral

monopolization in order to distract attention from its continuing lack of support for the global

price fixing claims that plaintiffs filed two years ago.  *See* S.A.C. ¶¶ 50-57.  Plaintiffs' brief lays

out two theories of unilateral misconduct:  first, citing a district court case more than twenty

years old to support their claim that each defendant monopolizes the service of its own elevators,

plaintiffs contend that § 2 "require[s] the monopolist's design to be 'reasonable,'" and supported

by a "pro-competitive justification."[7]  Pl. Br. at 17.  Section 2 imposes no such requirement.  In

its recent opinion in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540

U.S. 398, 407 (2004) the Supreme Court reaffirmed that companies may "establis[h] an

infrastructure that renders them uniquely suited to serve their customers."  Plaintiffs' only,

passing attempt to address *Trinko* is their assertion that the case involved the

Telecommunications Act of 1996 as well as the Sherman Act.[8]  That is true, but the Court was

careful to explain the difference between the two statutes:

> The 1996 Act is in an important respect much more ambitious than the
> antitrust laws.  It attempts "to eliminate the monopolies enjoyed by the
> inheritors of AT&T's local franchises." … The Sherman Act, by contrast,
> seeks merely to prevent unlawful monopolization …. The Sherman Act …

---

[7] Plaintiffs' statement that "[t]he Supreme Court has rejected" protection of quality and prevention of free-riding as pro-competitive justifications," is obviously incorrect.  Pl. Br. at 19 n.14.  Decades of Supreme Court precedent stand to the contrary.  *See, e.g., Bus. Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 728-29 (1988); *Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 55 (1977); *see also, e.g., Technical Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1467 n.12 (11th Cir. 1998) (*Kodak* approved protection of quality and control of costs as proper business justifications.).

[8] Plaintiffs disingenuously assert that the Court's opinion in *Trinko* "was based on the existence of a pervasive regulatory scheme."  Pl. Br. at 20.  The section of the opinion they quote, however, deals with an "essential facilities" claim (a claim plaintiffs themselves have not raised) and states that, even if such a theory exists over and above traditional law on refusal to deal, it would not apply in the telecommunications industry given the sharing provisions of the Telecommunications Act of 1996. *Trinko*, 540 U.S. at 412.

does not give judges *carte blanche* to insist that a monopolist alter its way of doing business whenever some other approach might yield greater competition.

540 U.S. at 415-16 (emphasis in original, citations omitted).  The U.S. antitrust laws simply do not impose a duty to design products "reasonably," whatever that may mean in a particular industry.

Second, plaintiffs allege that defendants unlawfully make replacement parts, tools, and software "difficult or impossible to obtain."  *See, e.g.*, S.A.C. ¶ 50.[9]  A "refusal to deal" by a monopolist might run afoul of the antitrust laws if the monopolist <u>terminates a voluntary and profitable course of dealing</u>, but this theory is at the "outer boundary" of the U.S. antitrust laws.  *Trinko*, 540 U.S. at 409.  *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), which centered on a significant change by Kodak to a prior course of dealing with independent service providers, is not to the contrary.[10]  In any event, as defendants noted in their opening brief, and as plaintiffs do not dispute, plaintiffs have not alleged the termination of a prior course of conduct here.  Accordingly, plaintiffs have not stated a valid refusal to deal claim.

Apart from these two basic claims, plaintiffs assert in passing that defendants engaged in "abuse of intellectual property," citing S.A.C. ¶ 54.  Pl. Br. at 20.  Paragraph 54

---

[9] This claim is undermined by plaintiffs' admission elsewhere in their complaint that defendants do sell such products to competitors, though at "an inflated price."  *See, e.g.*, S.A.C. ¶ 57.

[10] *Kodak* also relied on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602-05 (1985). *Kodak*, 504 U.S. at 483 n.32.  As the Court in *Trinko* explained, *Aspen Skiing* must be read narrowly. *Trinko*, 540 U.S. at 408-409.  Plaintiffs cite *New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875 (HB), 2005 U.S. Dist. LEXIS 23763, at *27 (S.D.N.Y. Oct. 18, 2005), which acknowledged that *Trinko* limited *Aspen Skiing*.  *See also Covad Communications Co. v. BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004) ("*Trinko* now effectively makes the unilateral termination of a voluntary course of dealing a requirement for a valid refusal-to-deal claim under *Aspen*."); *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 250-251 (S.D.N.Y. 2004) (allegation that defendant terminated profitable course of dealing sufficient to state a claim under *Aspen*, as limited by *Trinko*).

7

alleges that defendants "selectively enforce" their intellectual property rights. Even if this were true, which it is not, § 2 does not require a company to sue its competitors at all, much less in a way that treats them all alike.[11]

Plaintiffs also allege that defendants "seek to enter into long-term maintenance contracts" with customers. *See* S.A.C. at ¶ 51. Long-term contracts are not *per se* unlawful, and it is certainly not an antitrust violation to seek to enter into them. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 333 (1961). Finally, plaintiffs make the absurd suggestion that the law prohibits the development of intellectual property "when this promotes a monopoly." Pl. Br. at 20. Development of intellectual property is obviously not unlawful even though its effect may very well be to promote a monopoly. *See, e.g.*, U.S. CONST. art. I, § 8, cl. 8.[12]

None of plaintiffs' allegations regarding defendants' unilateral conduct comes close to stating a viable § 2 claim, and Counts III-X of the complaint should be dismissed.

## II.    THE FOREIGN CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(1)

Plaintiffs' foreign claims should be dismissed pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over those claims. Plaintiffs assert that "few courts" have addressed legal theories like their own—namely, that subject matter jurisdiction exists over wholly foreign claims because those injuries are purportedly dependent on injuries in the United

---

[11] In fact, those defendants that manufacture elevators do indeed sue one another for intellectual property violations, hardly a sign of a cozy oligopoly. *See, e.g.*, Complaint, *Otis Elevator Co. v. John Scott Simmons* [Thyssen], No. 04 CV 0015 (RAE) (W.D. Mich. filed Jan. 9, 2004); Complaint, *Thyssen Elevator Co. v. Otis Elevator Co.*, No. 00 CV 675 (SOM)(LEK) (D. Haw. filed Oct. 17, 2000); Complaint, *Otis Elevator v. Schindler Elevator*, No. CV-93-529029S (Conn. Super. Ct. filed Aug. 3, 1993). The court may take judicial notice of these filings. *See, e.g.*, *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d. Cir. 2004) ("[W]e may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

[12] *See also SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981); *United States v. Aluminum Co. of Am.*, 148 F.2d 416 (2d Cir. 1945). Fraud in the procurement of intellectual property may form the basis for a § 2 claim (*see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)), but plaintiffs have not alleged such fraud here.

States.  Pl. Br. at 22.  To the contrary, a number of courts have considered <u>precisely</u> such

assertions, and held them insufficient to overcome the subject matter jurisdiction limitations of

the Foreign Trade Antitrust Improvements Act ("FTAIA") (15 U.S.C. § 6a) and *F. Hoffmann-La

Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004).

One such case was *Empagran* itself, which the Supreme Court remanded for

consideration of plaintiffs' argument that their foreign injuries were "not independent" of effects

on U.S. commerce.  542 U.S. at 175.  On remand, the D.C. Circuit held that this argument could

not save the plaintiffs' claims from dismissal.  *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,

417 F.3d 1267, 1271 (D.C. Cir. 2005), *cert. denied*, --- U.S. ---, No. 05-541, 2006 U.S. LEXIS

68 (Jan. 9, 2006).  The D.C. Circuit concluded that the FTAIA's mandate requires a direct and

proximate causal relationship between U.S. and foreign injuries, which cannot be satisfied by

alleging that defendants "were able to sustain super-competitive prices abroad only by

maintaining super-competitive prices in the United States as well."  *Id.* at 1270-1271; *compare

Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10312 (HB)(DF), 2005 U.S.

Dist. LEXIS 19788 (S.D.N.Y. Sept. 19, 2005) (adopting D.C. Circuit's approach and dismissing

foreign claims despite allegations of worldwide conspiracy harming U.S. and world commerce)

*and In re Monosodium Glutamate Antitrust Litig.*, No. Civ. 00 MDL 1328 (PAM), 2005 WL

2810682, at *3 (D. Minn. Oct. 26, 2005) (adopting D.C. Circuit's approach and dismissing

foreign claims despite contention that defendants were able "to sustain super-competitive prices

abroad only by maintaining super-competitive prices in the United States") *with* Pl. Br. at 23

(arguing that prices in "the European market affect the prices in the United States and vice

versa.").[13]  Plaintiffs' foreign claims are identical to those considered in *Empagran*, *Latino Quimica*, and *Monosodium Glutamate*, and should likewise be dismissed.

As to standing, plaintiffs cite no case holding that standing exists over wholly foreign claims like those here, and ignore the relevant decisions cited by defendants, such as *Turicentro*, *S.A. v. Am. Airlines, Inc.*, 303 F.3d 293 (3d Cir. 2002).

Plaintiffs' suggestion that they should be entitled to discovery prior to dismissal of their foreign claims is also meritless.  Pl. Br. at 21-22.  As the district court emphasized in *Latino Quimica*, a motion to dismiss may be based on a <u>facial</u> attack on the complaint.  2005 U.S. Dist. LEXIS 19788, at *11-13, 27, 36.[14]  Here, even if plaintiffs' factual allegations are assumed to be true, subject matter jurisdiction does not exist—rendering the significant burdens of factual discovery related to plaintiffs' foreign claims unnecessary.[15]

### CONCLUSION

For the reasons stated above and in defendants' opening brief, the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), without leave to amend.  The Court should also dismiss the claims by the foreign plaintiffs pursuant to Rule 12(b)(1) because it lacks subject matter jurisdiction over these claims.

---

[13] Instead of addressing these recent cases, plaintiffs cite *Industria Siciliana Asfalti, Bitumi, S.p.A. v. Exxon Research & Engineering Co.*, No. 75 Civ. 5828-CSH, 1977 U.S. Dist. LEXIS 17851 (S.D.N.Y. Jan. 18, 1977), which dealt with alleged "reciprocal dealing."  *Id.* at *30-31.  Plaintiffs here make no remotely similar allegations.  Plaintiffs' other case, *MM Global Servs., Inc. v. Dow Chem. Co.*, 329 F. Supp. 2d 337 (D. Conn. 2004), is also not relevant, because the plaintiffs there had purchased the product at issue in the United States.  *Id.* at 339.

[14] Moreover, the Supreme Court in *Empagran* specifically noted the importance of the jurisdictional test being capable of being resolved "simply and expeditiously."  542 U.S. at 169.

[15] *In re Publication Paper* is irrelevant because it addresses personal jurisdiction, not subject matter jurisdiction.

Dated: February 3, 2006

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: ____/s/ Mark Leddy_____
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 974-1500

*Attorneys for Defendants*
*United Technologies Corporation and*
*Otis Elevator Company*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
Paula Howell
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*

THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*

WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone:  (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

11

Dated: February 3, 2006

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: _____
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 974-1500

*Attorneys for Defendants*
*United Technologies Corporation and*
*Otis Elevator Company*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
Paula Howell
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*

THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*

WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

11

Dated: February 3, 2006

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: _____
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 974-1500

*Attorneys for Defendants*
*United Technologies Corporation and*
*Otis Elevator Company*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
Paula Howell
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*

THELEN REID & PRIEST LLP

By: _~~~~~~~~~~~~
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*

WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

11

Dated: February 3, 2006

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: _____
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 974-1500

*Attorneys for Defendants*
*United Technologies Corporation and*
*Otis Elevator Company*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
Paula Howell
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants*
*Schindler Holding Ltd. and*
*Schindler Elevator Corporation*

WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*ThyssenKrupp Elevator Corporation and*
*Thyssen Elevator Capital Corporation*

THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants*
*Kone Corporation and*
*Kone Inc.*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _____
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant*
*ThyssenKrupp AG*

11

Dated: February 3, 2006

Respectfully submitted,

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: _____
Mark Leddy (ML-0483)
*Admitted pro hac vice*
Leah Brannon
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 974-1500

*Attorneys for Defendants
United Technologies Corporation and
Otis Elevator Company*

SHEARMAN & STERLING LLP

By: _____
Kenneth M. Kramer (KK-1462)
Jerome S. Fortinsky
Paula Howell
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for Defendants
Schindler Holding Ltd. and
Schindler Elevator Corporation*

THELEN REID & PRIEST LLP

By: _____
Gerald Zingone (GZ-6599)
*Admitted pro hac vice*
Michael Evan Jaffe
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
Telephone: (202) 508-4000

*Attorneys for Defendants
Kone Corporation and
Kone Inc.*

WEIL GOTSHAL & MANGES LLP

By: _____
A. Paul Victor (AV-0363)
Scott Martin
Christopher V. Roberts
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants
ThyssenKrupp Elevator Corporation and
Thyssen Elevator Capital Corporation*

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: *Terry Myers*
Terry Myers (TM-3083)
Anthony A. Dean
Thomas R. Valen

One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 649-4700

*Attorneys for Defendant
ThyssenKrupp AG*

11